### No. 41,776

St. Louis-San Francisco Railway Company, a Corporation, *Appellee*, v. (The State Corporation Commission of the State of Kansas), City of Fall River, Kansas, Fredonia Chamber of Commerce, Neodesha Chamber of Commerce, and Interested Shippers and Users, Intervenors, *Appellants*.

(353 P. 2d 505)

Opinion filed July 2, 1960.

*Rex A. Lafferty*, of Fredonia, argued the cause and was on the brief for the appellants.

*Henry V. Gott*, of Wichita, argued the cause, and *John E. McCullough*, of St. Louis, Missouri, *W. F. Lilleston, George C. Spradling, George Stallwitz*,

*Ralph M. Hope, Richard W. Stavely, Charles S. Lindberg* and *Ronald M. Gott*, all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This appeal arises out of an application by the St. Louis-San Francisco Railway Company to discontinue the operation of two of its passenger trains. The state corporation commission denied the application, and on appeal the district court held the order of the commission to be unlawful and unreasonable, and set it aside. Certain protestants have appealed from that judgment. The commission has not appealed.

The company's application to discontinue the two passenger trains in question need not be detailed, and it is sufficient to say that it alleged the over-all facts of the matter from the standpoint of the company and set forth figures showing the great financial loss sustained by the company from the operation of the trains. At the hearing numerous witnesses testified and many exhibits were introduced. At the conclusion thereof the commission denied the application and, among other things, found that the company's financial deficit was attributable, to a large extent, to the six-man crew employed in the operation of the trains; that such deficit could be decreased or eliminated by the substitution of a one-unit motor car; that the lack of patronage on the trains was partly the result of the company's failure to solicit passenger business, and that public convenience and necessity required the continued operation of the trains.

The company's application for a rehearing being denied, it appealed to the district court.

The court, after reviewing the record before the commission, made findings of fact and conclusions of law, as provided by G. S. 1949, 66-118k, and vacated and set aside the commission's order as being unlawful and unreasonable. As previously stated, certain of the protestants have appealed.

The court's findings and conclusions are detailed and lengthy and will not be set out in full. We do, however, summarize such portions of them as will show some of the matters in controversy and the basis of the trial court's decision.

The company's passenger trains Nos. 309 and 310 operate daily between Monett, Missouri, and Wichita, a distance of 239.6 miles. 181.7 miles of the route are in Kansas, and the Kansas mileage is

of course all that is involved here. Train No. 309 is westbound and leaves Galena, near the Kansas border, at 4:07 a. m., and arrives in Wichita at 9:35 a. m. Train No. 310 is eastbound and leaves Wichita at 4:30 p. m., and arrives in Galena at 9:18 p. m. The equipment on each train consists of a diesel engine, baggage car, combination mail and baggage car, and an air-conditioned chair car with sixty reclining seats. The trains are operated by a six-man crew consisting of an engineer, a fireman, a conductor, a brakeman, an express-baggage man and a porter. The route of the trains is generally parallel to Kansas state highway 96 and serves some twenty-four towns and villages.

During a representative or average period in 1958 a traffic count established that the trains transported an average of 7.6 passengers per train mile. For the twelve-month period ending March 31, 1958, the total earnings of the two trains in Kansas amounted to $131,980.92, of which amount $72,854.75 represented revenue for carrying United States mail, which is not a common-carrier duty or obligation. During that period the amount of common-carrier revenue was $59,126.17, whereas the direct or out-of-pocket expenses in operating the trains was $206,955.47, of which amount $89,220.79 was paid to the train crew as wages.

All points served by the trains in Kansas are located on available federal, state or other all-weather highways. A regularly scheduled bus line operates daily over Kansas state highway 96. All but 0.63% of the urban population of the points served by the trains have common-carrier bus service, and all but 5.20% of such urban population have other railroad passenger-train service, and all but 3.18% have other railway-express service. The court also made findings with respect to the increase in private automobile registration and ownership in recent years in the localities served by the trains, and findings as to the great decrease in passenger traffic over the route in question over the years. It also made findings as to the large increase in taxes and hourly wages paid by the company during the period in which passenger traffic had steadily declined.

In concluding that the order of the commission denying the application to discontinue the two passenger trains was unlawful and unreasonable and therefore should be set aside, the court held that the weight of the evidence did not support the order that public convenience and necessity required the continued operation of the trains, and that the state, through the agency of the commission,

may not require common carriers by railroad to maintain services available to the general public regardless of the cost of operations and regardless of the meager use of those services, even though discontinuance of the same would result in inconvenience to a few.

Although protestants' specifications of error are five in number, the gist of them is that the trial court, in weighing the evidence before the commission, in effect substituted its judgment for that of the commission and erred in holding the commission's order to be unlawful and unreasonable.

In this day and age of the privately-owned automobile and modern all-weather highways, courts throughout the land frequently are called upon to consider questions such as we have here. Kansas is no exception, and the recent case of *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.*, 182 Kan. 603, 322 P. 2d 715, in which numerous decisions from other jurisdictions, as well as our own, are discussed, well illustrates the modern trend with respect to the continuance of local passenger-train service where the public, for all practical purposes, has in fact abandoned its use.

In that case it was held that railroad passenger trains are operated primarily for the carriage of passengers; that if the public abandons the trains for passenger travel there is no duty or obligation to continue their operation at a substantial loss; that in a proceeding to discontinue certain trains the revenue, expenses and losses shown in the operation of a train have a direct bearing upon whether public convenience and necessity require the continued operation of any particular train (syl. 3); and that a sound test to follow where a railroad seeks to discontinue passenger-train service is whether the expenses which will be eliminated by discontinuance of the passenger service have exceeded to such an extent the revenue which will be similarly eliminated that the resulting net saving to the railroad will further the public good in greater measure than the loss of passenger service will impair it (syl. 4).

Applied to the facts before us, it is clear that the principles announced in that case are controlling.

With respect to the contention concerning the substitution of a one-unit motor car and the reduction of the number of the train crew through renegotiation of labor contracts, a short answer is that the record simply does not bear out the possibility of the successful completion of either suggestion, and, as urged by the

company in its brief—"a court or commission is not allowed to roam the unfenced fields of speculation."

The aspirations and desires of protestants here to "keep the trains running" are of course understandable and commendable, but may not be substituted for the cold, hard facts of record which clearly establish that, for all practical purposes, the traveling public in the area involved has in fact abandoned the use of the two passenger trains in question. It is the public necessity as distinguished from the local convenience of a few that affords the primary consideration in determining if trains operated at great loss may be discontinued, and the best evidence as to whether there is a public necessity for the continuation of trains is the extent to which the public makes use of them.

The record in this case fully supports the findings and judgment rendered to the effect that public convenience and necessity do not require the company to continue the operation of the trains in question. No error being shown, the judgment is affirmed.

WERTZ and ROBB, JJ., not participating.