(801 P.2d 1331)

No. 65,073

WAYNE C. LARSON, *Appellant*, v. SHAWN E. BATH, HERBERT C. BATH, DOROTHY BATH, and CONTINENTAL INSURANCE COMPANY, *Appellees*.

Opinion filed November 30, 1990.

*Fred Spigarelli* and *Pamela G. Phalen*, of Spigarelli, McLane & Short, of Pittsburg, for appellant.

*Barry W. McCormick*, of Payne & Jones, Chartered, of Overland Park, for appellees.

Before ELLIOTT, P.J., REES, J., and DONALD L. WHITE, District Judge, assigned.

ELLIOTT, J.: Wayne C. Larson appeals the summary judgment in favor of Continental Insurance Company (Continental), which denied Larson's claim for underinsured motorist coverage for an accident.

We reverse.

The facts are essentially uncontroverted. Larson was involved in an auto accident with another vehicle driven by Shawn Bath, a minor. Larson was driving a vehicle owned by his employer, Missouri-Kansas-Texas Railroad Company (Katy), and was acting

within the scope of his employment, Continental insured the Katy vehicle.

Katy's agent, Mel Compton, negotiated the coverage and purchase of Katy's insurance with a broker by telephone. The policy in question provided $1,000,000 liability coverage. Endorsement 4 listed uninsured/underinsured motorist coverage (UM) for Kansas resident insureds at $50,000. The policy also mentioned Form A1303 as an attachment. This form was Continental's Kansas UM coverage limit rejection acknowledgement form and was used by Continental as evidence of an insured's rejection of higher UM limits pursuant to K.S.A. 1989 Supp. 40-284. No form A1303 signed by a Katy representative was ever attached to the policy.

The Bath family policy had $50,000 liability limits. Continental intervened in plaintiff's personal injury suit and moved for summary judgment, claiming Katy had rejected UM coverage above $50,000. Larson also moved for summary judgment, claiming the rejection of UM coverage equal to the liability limit was insufficient under K.S.A. 1989 Supp. 40-284(c) and, thus, UM coverage of $1,000,000 was available.

The court granted Continental's motion for summary judgment, ruling the rejection of higher UM limits was adequate.

K.S.A. 1989 Supp. 40-284(c) provides that the insured named in the policy may reject, *in writing*, the UM coverage mandated by 40-284(a). The purpose of UM coverage is to compensate an innocent victim who is injured by an uninsured or underinsured driver; the UM statute should be liberally construed to fulfill that intended purpose *Stewart v. Capps*, 14 Kan. App. 2d 356, 357, 789 P.2d 563 (1990).

The question presented in this case of first impression is easy to state: What kind of "writing" is required to evidence rejection of higher UM coverage by the named insured? And while every state except Michigan has an uninsured motorist statute, the statutory schemes are vastly different and in some cases are amended almost annually. As a result, we recognize cases from other jurisdictions have limited value.

Typically, the evolution of the rejection option for higher UM coverage changes from (1) insured has the *right to reject*, to (2) insured has the right to reject *in writing*, to (3) insured has the right to reject in writing and the rejection must be *on a form prescribed* by the state insurance commissioner. It would appear

that litigation on the issue in California, Florida, and Louisiana has led to the statutory changes.

We align ourselves with the rationale of those courts which have expressed public policy goals similar to Kansas. It seems to us these courts express a rationale most consistent with statements by our Supreme Court that the UM statute is to be liberally construed. *E.g., Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, Syl. ¶ 2, 549 P.2d 1354 (1976). See Widiss, *Uninsured Motorist Coverage*, 40 J.K.B.A. 199, 227-30 (1971). Because the rejection provisions detract from the public policy goals of protecting innocent victims, the rejection provisions are narrowly and strictly construed by these same courts. See, *e.g., Patrick v. Cherokee Ins. Co.*, 354 Pa. Super. 427, 512 A.2d 24 (1986); *Employers Cas. Co. v. Sloan*, 565 S.W.2d 580, 583 (Tex. Civ. App. 1978).

Further, where the UM statute has a written rejection requirement, something less is ineffective despite clear evidence of the insured's intent to reject the coverage. See *Employers Cas. Co.*, 565 S.W.2d at 585.

In *Patrick*, the court strictly construed Pa. Stat. Ann. tit. 40, § 2000 (Purdon 1971) allowing certain common carriers to reject coverage, without reference to the insured's intent. The plaintiff in *Patrick* was injured while riding in a taxicab. The cab company's insurance policy included an unsigned endorsement entitled, "Rejection of Uninsured Motorist Coverage." The court, in ruling the unsigned endorsement insufficient as a rejection in writing, noted: " 'There must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it. . . . The statutory mandate may be complied with only by including uninsured motorist coverage or by an affirmatively expressed rejection in writing by the insured.' " *Patrick*, 354 Pa. Super. at 432 (quoting *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 620, 300 A.2d 61 [1973]).

In *Rankin v. West American Ins. Co.*, 84 Cal. App. 3d 829, 149 Cal. Rptr. 57 (1978), plaintiff was injured while driving a vehicle owned by his employer. The court found the rejection portions of the UM statute were not met and commented:

"[T]he named insured is a sophisticated business corporation, buying insurance under the guidance of its broker. . . . Nevertheless, the statute makes no exception for [these] circumstances. . . .

"It is futile for [insurer and employer] *to argue their intent,* or to point to provisions in the [employer's] policy which are inconsistent with uninsured motorist coverage." 84 Cal. App. 3d at 836. (Emphasis added.)

Another court has held that to effect a valid rejection of UM coverage the *insured* must expressly do so in writing in a single document, setting forth the specific date and particular policy. A writing, *regardless of insured's intent,* of a less precise nature is ineffective. *Roger v. Estate of Moulton,* 513 So. 2d 1126, 1131-32 (La. 1987).

Additionally, at least one court has rejected the argument that a valid rejection of equivalent UM coverage can be found by applying for lower UM limits than liability coverage. *Poots v. Motorist Ins. Cos.,* 38 Ohio App. 3d 48, 526 N.E.2d 71 (1986).

Our search for what the legislature intended by its rejection in writing language has proved fruitless. If we were free to roam the unfenced fields of conjecture, see *St. Louis-San Francisco Rly. Co. v. State Corporation Comm.,* 187 Kan. 23, 27, 353 P.2d 505 (1960), we might speculate that rejection in writing by the named insured was intended to protect only the individual consumer/insured rather than sophisticated insureds like Katy. But given the lack of legislative guidance, we feel compelled to apply the philosophy of an intent to provide protection to injured victims and to liberally construe the protections of the UM statute by narrowly construing its exceptions. See *Van Hoozer v. Farmers Ins. Exchange,* 219 Kan. 595, Syl. ¶ 2. The language must apply equally to all those covered by the provisions of 40-284.

It has been said that hard facts make for less than good law. For example, the policy in question appears to be a renewal policy. That being the case, if a valid written rejection by the named insured were in place at the time the original policy was issued, there would be no need for a written rejection on the renewal policy. 40-284(c). Unfortunately, the record is silent as to the facts surrounding the issuance of the original policy.

Brief mention should be made of two additional arguments made by Continental. First, Continental argues plaintiff lacks

standing to question whether his employer sufficiently rejected higher UM coverage in writing.

Since a rejection by a named insured binds all parties covered by the policy (K.S.A. 1989 Supp. 40-284[c]), we have no hesitancy in ruling that plaintiff, as a member of the class for whom the benefits of UM coverage were intended to apply, has standing to challenge the sufficiency of the rejection. See *Pechtel v. Universal Underwriters Ins. Co.*, 15 Cal. App. 3d 194, 198-99, 93 Cal. Rptr. 53 (1971); *Cullars v. Manatee County*, 463 So. 2d 484 (Fla. App. 1985).

Finally, Continental contends 40-284 does not apply at all because the policy was not delivered or issued for delivery in this state. K.S.A. 1989 Supp. 40-284(a). The policy was apparently delivered to Katy's corporate parent in Texas.

Suffice it to say that Continental knew that the policy was intended to cover vehicles principally garaged in Kansas because it attached a Kansas endorsement to the policy. Accordingly, Kansas has a "vital interest" in the application of its UM statute to the policy in question. See *Estate of Moulton*, 513 So. 2d at 1130-31.

We hold that Katy did not meet the statutory requirement for rejecting the higher UM limits in accordance with 40-284(c). The *named insured* did not reject *in writing* the higher UM limits.

Reversed.