[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION ON PENDING MOTIONS FOR DECLARATORYJUDGMENT AND SUMMARY JUDGMENT]
In this case, the court is called upon to determine whether or not the defendant Shaklee Corporation (hereinafter, "Shaklee"), the insured, effectively elected to receive a minimal amount of uninsured motorist coverage from defendant Insurance Company of America (hereinafter, "INA") pursuant to the statutory requirements of General Statutes Section 38a-336(a)(2). After evaluating the arguments made by the parties and the facts of the case as presented in pending motions for summary judgment and declaratory judgment, the court concludes that the election was ineffective.
[Factual Background]
An abbreviated statement of the factual background of this case is necessary to understand the court's ruling. All of the facts stated herein are gleaned from the court's review of the file and the pending motions, plus attachments.
On June 9, 1989, the plaintiff, Ann Marie Fournier, was injured when an automobile she was driving on Route 66 in Marlborough, Connecticut, collided with a car driven by an uninsured motorist. The automobile was owned by defendant Shaklee and/or its subsidiary, Golden Gate Management, Inc., (hereinafter, "Golden Gate"), a California corporation. Shaklee had leased the car to Emile and Janice Fournier, plaintiff's parents, pursuant to a "Bonus Car Agreement." Emile and Janice Fournier performed services for Shaklee in a sales capacity. CT Page 4981
The primary insurer of the car was defendant, INA. The INA policy provided for liability coverage in the amount of $2 million, with a $1 million deductible payable by Shaklee for damages under liability and uninsured motorist coverage. The effective policy dates for the INA policy were October 1, 1988, to October 1, 1989. Insurance coverage for three other cars owned by Emile and Janice Fournier was provided by defendant United States Fidelity and Guaranty Company (hereinafter, "USFG").
On July 27, 1990, plaintiff executed a release to Shaklee and Golden Gate, accepting $20,000.00 in payment of her claim. The release did not mention INA. Plaintiff executed the release in reliance on the advice of her lawyer, defendant Alan Schuman, that $20,000.00 was the maximum amount of coverage available to her under Shaklee's policy with INA.
Subsequently, plaintiff filed arbitration actions, including one against USFG, in connection with claimed uninsured motorist coverage. USFG declined to arbitrate, claiming that plaintiff had failed to exhaust the uninsured motorist coverage available under the INA policy.
[Discussion]
The complaint in this case was filed in February, 1993. In her prayer for relief, the plaintiff sought a declaration from the court as to the amount of uninsured motorist insurance coverage available to her under the INA policy. In her October 4, 1993, Motion for Summary Judgment, plaintiff seeks a ruling on this request.
INA, in its Motion for Summary Judgment dated October 4, 1993, and memorandum in support, takes the position that Shaklee effectively requested pursuant to General Statutes § 38a-336(a)(2) the minimal amount of liability insurance allowed by law — $20,000.00 — and that $20,000.00 was therefore all that was available to plaintiff under the INA policy. INA argues that bid specifications submitted to a broker, and a subsequent letter of November 22, 1988, effectively elected the minimal coverage under § 38a-336(a)(2).
USFG, in its Motion for Summary Judgment dated September 30, 1993, and memorandum in support, argues that Shaklee CT Page 4982 failed to effectively elect minimal coverage under § 38a-336(a)(2), because Shaklee's purported election did not conform to the statutory requirements, and because not all named insureds on the relevant policy opted for minimal uninsured motorist coverage under the policy.[1] USFG claims, as a consequence, that INA is still liable to provide insurance coverage for plaintiff's damages in an amount up to $2 million.
Shaklee and Golden Gate argue that Shaklee had no comply with the statutory requirements of § 38a-336(a)(2) because California law, not Connecticut law, governs in the case.[2] They also argue that, in the event Connecticut law governs, Shaklee effectively elected the $20,000.00 per person/$40,000.00 per accident uninsured motorist insurance coverage pursuant to § 38a-336(a)(2), and that they are thus entitled to summary judgment because INA made payment of $20,000.00 to plaintiff after the release was executed.
The issue at the heart of this case is whether Shaklee's election of minimal limits was effective under the statute.
Before focusing on the election issue, a brief discussion of the law relating to summary judgment and declaratory judgments, and the statutory requirements of § 38a-336(a)(2) as written during the relevant time period, is necessary.
Summary judgment is a method of resolving litigation when "the pleadings, affidavits, and any other proof submitted show that the moving party is entitled to judgment as a matter of law." [Connelly v. Housing Authority,] 213 Conn. 354,364 (1990). The test for determining whether or not to grant a summary judgment motion "is whether a party would be entitled to a directed verdict on the same facts." Id. "[A] directed verdict will be granted only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion then that embodied in the verdict as directed." [United Oil Co. v. UrbanRedevelopment Commission of Stamford,] 158 Conn. 364, 380
(1969).
Where the sole question to be decided is one of law, it can be properly determined on a motion for summary judgment. [Schlott v. Zaremski,] 32 Conn. Sup. 567 (1975). In a declaratory judgment action the court may address the merits of the CT Page 4983 claim upon a motion for summary judgment. [United Oil Co. v.Urban Redevelopment Commission of Stamford,] supra, 364.
A declaratory judgment action is a special proceeding under General Statutes 52-29, as implemented by sections 389 and 390 of the Practice Book. [Rhodes v. Hartford,]201 Conn. 89, 92 (1986). "The purpose of a declaratory judgment action is to secure an adjudication of rights where there is a substantial question in dispute or a substantial question of legal relations between the parties." [Connecticut Association ofHealth Care Facilities, Inc. v. Worrell,] 199 Conn. 609, 613
(1986). The sole function of the trial court in a declaratory judgment action is to ascertain the rights of the parties under existing law. [Halpern v. Board of Education,] 196 Conn. 647,654-55 (1985). Declaratory judgment actions have been used to determine the rights and liabilities of parties under an automobile insurance policy. See [Shelby Mutual Insurance Co. v.Williams,] 152 Conn. 178, 179 (1965); [Plunkett v.Nationwide Mutual Insurance Company,] 150 Conn. 203 (1963); [St. Paul Fire Marine Insurance Company v. Shernow,]22 Conn. App. 377, 380 (1990).
[Section 38a-336(a)(2)]
General Statutes § 38a-336(a)(2) concerns uninsured motorist coverage. Prior to amendment, it provided as follows:
 (a)(2) [E]ach automobile liability insurance policy issued or renewed on or after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.
General Statutes § 38a-336(a)(2). CT Page 4984
The statute requires a request to be made in writing by the insured, but does not state what the form of the request should be, to whom it should be made, and by when it must be made. It does not say if such a request may be made through a broker, or if it must be made directly by the insured. It does not say if such a request, to be effective, must be made before the effective date of a policy, or may be made afterwards. Nor does it speak to the requisite formality or specificity of such a request. See [Anno., Construction of Statutory Provision GoverningRejection or Waiver of Uninsured Motorist Coverage,] 55 A.L.R.3d 316 (1974).
Our Supreme Court has examined the statute and its predecessor a number of times. In [Nicolletta v. NationwideIns. Co.,] 211 Conn. 640 (1989), the court eschewed an expansive reading of General Statutes § 38-175c(a)(2), the predecessor statute, ruling that § 38-175c(a)(2) did not furnish a statutory basis for imposing a limitation on the stacking of uninsured and underinsured motorist coverage. Refusing to read language into the statute that wasn't there, the court, through Justice Covello, ruled that the statute "does not give an insurance carrier a[n] . . . option to reduce the coverage . . ." Id. at 647.
In [Travelers Indemnity Co. v. Malec,] 215 Conn. 399
(1990), the court upheld a trial court determination that Travelers had, failed to effectively elect a lesser amount of coverage under § 38-175c. Justice Covello took note of the heightened legislative interest in uninsured motorist protection, a mandate to raise the amount of uninsured protection, and "an intention to increase the public's consciousness as to the availability of this kind of insurance. . . ." Id., 403. "We have no doubt that the General Assembly contemplated that an insured should make a purposeful and knowing decision to quest a lesser amount of UM coverage," he wrote, Id. In [Malec,] the court found a purported written election made on May 18, 1982, to be ineffective in light of the operative date of the amendment at issue, July 1, 1984. The court stated that: "We are entitled to presume that if the legislature intended that past acts could constitute compliance with the mandate of requests for a lesser amount pursuant to the statute, language to that effect would appear in the statute."
In [Nationwide Mutual Ins. Co. v. Pasion,] 219 Conn. 764
CT Page 4985 (1990), the court ruled that the predecessor statute required the signatures of all named insureds for an election of lesser coverage to be effective. The court rejected the argument that the term "insured" in the statute referred only to the named insured who initially purchased or applied for the policy. Where a statute is clear, the court stated, there is no room for statutory construction. Where the meaning is ambiguous, however, the court must look to "its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment." Id., 769.
"The apparent intent of the legislature was to assure that consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction to be in writing," wrote Judge Hennessy. Id. at 770-771.
In [Harlach v. Metropolitan Property Liability Ins.Co.,] 221 Conn. 185 (1992), the court again considered the statute, by then renumbered as 38a-336. In [Harlach,] the court, again speaking through Justice Covello, found that plaintiff had effectively elected lower uninsured motorist coverage when he initialed a form sent to him by the defendant insurance company indicating a preference for the minimum coverage option, signed his name, dated the form, and mailed it to the defendant. In light of the facts of the case, the court rejected plaintiff's claim that he did not fully understand the insurance coverage he was declining.
In [Aetna Casualty Surety Co. v. Warichar,]4 Conn. L. Rptr. 292 (July 3, 1991, Thim, J.), it was held that 175(c) clearly applied to "sophisticated consumers" such as the state. Judge Thim rejected the claim put forth by Aetna that a letter, written by the state's agent inviting Aetna to submit a proposal, constituted an effective election of lower limits. The information provided by the agent included a sample insurance policy with a $1 million liability limit and a $40,000 uninsured/underinsured limit.
"Statutory provisions allowing for the rejection or limitation of underinsured motorists coverage should be narrowly and strictly construed since the provisions detract from the public policy goals of protecting innocent victims," stated Judge Thim. "At the minimum, an express request for lesser coverage should be required." CT Page 4986
In summary, Connecticut's courts have taken a non-expansive approach when asked to evaluate the language of the statute. So have courts in other states analyzing similar statutes, ruling, for example, that ambiguous language must be construed in a manner most favorable to the insured in light of the presumption of coverage. [Patrick v. Cherokee InsuranceCo.,] 512 A.2d 24, 27 (Pa.Super. 1986); Cf. [Streitweiserv. Middlesex Mutual Assurance Co.,] 219 Conn. 371 (1991). In light of the public policy of protecting persons injured by uninsured motorists, and because the party claiming an exception to coverage generally bears the burden of proof, it has also been held that the insurer should bear the burden of proving that the lesser amount of coverage was selected. [Roger v. Estate ofMoulton,] 513 So.2d 1126 (La. 1987); [Poots v. MotoristInsurance Companies,] 526 N.E.2d 71 (Ohio App. 1986).
[INA's Claims]
With this backdrop, INA's two principal claims will now be addressed.[3]
First, INA argues that bid specifications it submitted to Marsh McLennan constituted an effective election under the statute.[4] In support of this argument, INA relies on [Weirv. American Motorists Insurance Co.,] 816 P.2d 1279
(Wash.App. 1991), a case also involving Marsh McLennan, in which the court held that a broker's bid proposal for insurance coverage which indicated that the insured was requesting minimum statutory uninsured motorist coverage was sufficient to constitute an election of lesser coverage.
The court does not accept INA's argument. The bid specifications relied upon by INA, particularly the general statement dated October 1, 1984,[5] are, in the court's view, a general statement of future intention relating to a future, not yet determined policy, not a then existing one. They may be viewed as preliminary to a contract, but they do not state a present intention to make an election. [Malec,] however, suggests that such an election is not effective. To make a prospective request which is purported to have effect at some future, undetermined date does not, in the court's view, comport with the legislature's intention in choosing the statutory language it did. [Narel v. Liburdi,] 185 Conn. 562, 571
(1981). ("It is a cardinal rule of statutory construction that a statute CT Page 4987 is not to be construed so as to thwart its purpose."); see also [In Re Sheldon G.,] 216 Conn. 563, 568 (1990). In this case, the general statement provided in the October 1, 1984, letter was made approximately four years before the `effective date of the policy at issue, and makes no explicit reference to a specific policy, a specific policy period, a specific amount, or the State of Connecticut. Moreover, if the general expression contained in the bid specifications was meant to be effective for all time, then one must ask why Shaklee engaged in the communications evidenced by the November 22, 1988 letter it also relies upon, as well as a July, 1989, document in which Shaklee purported to elect uninsured motorist coverage for bodily injury at the minimum limits allowed by state law. Additionally, the record before the court does not make it clear when the bid specifications were communicated to Marsh 
McLennan, when and by whom they were received, and what was done with them. Under the circumstances, their legal effect is far from evident.
In the court's view, in the absence of clear direction from a higher court to the contrary, given the facts of this case, the public policy considerations present, and the need to narrowly construe the statute in deference to the rulings cited above, the bid specifications do not provide the kind of clear, unequivocal request required to make an effective election of lesser coverage under the statute.[6]
Next, the court must consider INA's claim that Shaklee effectively elected lower coverage pursuant to a November 22, 1988 letter from Gordon Marks, a claim administrator with Shaklee, addressed to Jennifer McHugh of Marsh McLennan.
The letter reads as follows, in full:
 Re: Automobile Liability Policy Terms 10/1/87-88 and 10/1/88-89 [Under-insured Motorists Coverage]
Dear Jennifer:
 This will confirm our recent telephone conversation wherein I advised you that Shaklee Corporation does not wish to purchase under-insured motorists coverage. We have previously discussed the fact that some states, by statute, require that under-insured motorists CT Page 4988 coverage be included when uninsured motorists coverage is purchased. In these situations, it has been my experience that the under-insured motorists coverage is not purchased separately e.g. if you purchase uninsured motorists coverage of 15/30, the under-insured motorists coverage applicable to that endorsement will be the same limit.
 Therefore, it is my recommendation that the referenced policies be endorsed to include uninsured motorists coverage in split limits equal to the minimum required for financial responsibility in each state as previously discussed with Mary Cross. We will then reject purchasing under-insured motorists coverage.
 In the event that CIGNA is not able to verify which states automatically include under-insured with uninsured, we would the prefer [sic] that no underinsured motorists endorsements be included with our policy.
 If necessary, let's set up a conference call with Mary Cross to discuss the details as I would like to move forward with finalizing these matter immediately.
Thank you for your assistance.
Very truly yours,
SHAKLEE CORPORATION
 Gordon Marks /s/ Claims Administrator
Analysis of whether Shaklee made an effective election of lesser coverage under the statute begins with evaluation of the plain language of § 38a-336(a)(2) itself. The statute requires that uninsured motorist coverage for automobile liability insurance policies issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured "requests" in writing a lesser amount. The precise issue before the court is whether the November 22, 1988 letter constituted an effective "request" for a lesser amount. CT Page 4989
General Statutes § 1-1, "Words and Phrases," states that "(a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . ."
Ballentine's Law Dictionary (1969 ed.) defines "request" to mean "to ask or express a wish for something;" and ". . . to direct or command, although in a delicate manner," noting that "under some circumstances, a request is the same as a command and has the same meaning."
As Judge Thim ruled in the [Warichar] case, supra, "[s]tatutory provisions allowing for the rejection or limitation of uninsured/underinsured motorists coverage should be narrowly and strictly construed since the provisions detract from the public policy goals of protecting innocent victims. At the minimum, an express request for lesser coverage should be required." See [Travelers Indemnity Co. v. Malec,] supra; [Larson v. Bath,] 801 P.2d 1331 (Kansas App. 1990); ("Public policy, legislative intent, and strict statutory interpretation of exceptions to coverage all require clear, unambiguous rejection." [Roger v. Estate of Moulton,] 513 So.2d 1126, 1131 (La. 1987)).
To be effective any "request" must unambiguously evidence a present intention, see [Malec,] supra, to elect lesser coverage. Language which merely expresses an intention to take a future course of action does not, in this court's view, satisfy the formal requirements of law. [Roger v. Estate ofMoulton,] supra, 1131. Moreover, while the intention of the party purporting to make an election is one factor to be considered, good intentions do not substitute for a failure to make an effective election in precise, unmistakable, unambiguous terms. [Roger v. Estate of Moulton,] supra, 1132.
With these principles in mind, the court now turns to analysis of the November 22, 1988 letter. Some general attributes of the letter are worth noting.
The principal focus of the letter is underinsured, not uninsured, coverage. Paragraph two states that it is the "recommendation" of the letter's author, Gordon Marks, a claims administrator, that "the referenced policies be endorsed to include uninsured motorists coverage in split limits equal to the CT Page 4990 minimum required for financial responsibility in each state . . ." By its very terms, in the final paragraph, the letter contemplates future discussion of details and "finalizing these matters immediately." While the text above the letter references "Auto Liability Policy Terms 10/1/87-88 and 10/1/88-89 Underinsured Motorist Coverage," there is no reference in the text to when any purported election was to be effective. Nor is there a reference to the State of Connecticut, any particular policy, or the precise amount of coverage sought. As noted previously, the letter was apparently provided by Shaklee to Marsh McLennan.
The American Heritage Dictionary of the English Language (1969) defines "recommend" as "to commend to the attention of another as reputable, worthy, or desirable." Commonly used synonyms include the words "advise," "suggest," and "advocate." In the court's view, in light of all of the attendant circumstances, the November 22, 1988 letter was not sufficient to effectively make an election for lower coverage under § 38a-336(a)(2). The use of the word recommends — rather than some other word — evidenced a probable intention to take action in the future, but not a clear, positive directive to take action in the present. The letter by its very terms contemplated further dialogue and fact gathering prior to action being taken. It was, therefore, within Shaklee's and Marsh McLennan's contemplation that Gordon Marks' recommendation was subject to amendment, modification, or even rejection.
In the court's view, the fact that Shaklee felt compelled to send the July 1989 communication mentioned earlier provides further, albeit indirect, evidence that Shaklee itself entertained doubts about the efficacy of its prior purported elections under the statute. This communication was unnecessary if Shaklee's previous elections had been effective.
The court acknowledges that words have a variety of subtle shades of meaning depending on context. The court further acknowledges that under some circumstances, a "recommendation" could be the equivalent of a clear, unequivocal directive, depending on the status of the parties, and other factors. But this case does not provide an appropriate opportunity for expansively construing the word "recommendation" in light of all of the factors present.
Under the circumstances, the court cannot find that CT Page 4991 Shaklee made a valid election of minimal coverage under the statute as then written because it cannot find that the recommendation was a "request" under the statute.
[Summary and Conclusion]
In summary, the court's disposition of the pending motions is as follows:
The plaintiff's motion for summary judgment is granted to the extent that the court rules herein that Shaklee failed to effectively elect lesser coverage under §38a-336(a)(2).[7]
The summary judgment motions of Shaklee, Golden Gate, and INA are denied insofar as they seek rulings that Shaklee effectively elected lesser coverage under § 38a-336(a)(2), and/or that plaintiff has only $20,000.00 available under the INA policy.
The summary judgment motion of USFG is also denied because the court cannot determine, based on the record before it, the extent to which USFG is entitled to a credit under the primary insurance coverage of INA.
DOUGLAS S. LAVINE JUDGE, SUPERIOR COURT