Donald C. BISHOP, Plaintiff,

v.

**EMPIRE FIRE & MARINE INSUR-ANCE COMPANY and Lanter Delivery Systems, Inc. Defendants.**

No. 98–2207–JWL.

United States District Court,
D. Kansas.

April 22, 1999.

James T. Thompson, Ronald L. Edelman, Edelman & Thompson, Kansas City, MO, for Donald C Bishop, plaintiff.

Jan P. Helder, Jr., Norman Siegel, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Empire Fire & Marine Ins. Co., defendant.

Brian D. Martin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Jan P. Helder, Jr., Norman Siegel, Sonnenschein, Nath & Rosenthal, Kansas, MO, William W. Richerson, Sanders Conkright & Warren LLP, Kansas City, MO, for Lanter Delivery Systems, Inc., defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff instituted this diversity action to recover damages for injuries sustained in a car accident allegedly caused by a "phantom" motorist. Presently before the court are defendants Empire Fire & Marine and Lanter Delivery Systems, Inc.'s motion for summary judgment, or, in the alternative, for partial summary judgment (doc. 28) and plaintiff Donald C. Bishop's cross motion for partial summary judgment (doc. 32). For the reasons set forth below, both parties' motions are granted in part and denied in part. Specifically, plaintiff's motion is granted, and defendants' motion denied, to the extent that the court finds plaintiff entitled to uninsured motorist coverage under the policy. The court finds that the amount of uninsured motorist coverage available is limited to the statutory minimum of $25,000, and thus plaintiff's motion is denied and

defendants' motion granted with respect to that issue. Finally, the court concludes that to the extent that personal injury protection benefits are available under the policy, such benefits are limited to the statutory minimum amounts prescribed by statute, and thus grants defendants' motion, and denies plaintiff's motion with respect to that issue.

### I. Facts

The facts in this case are essentially uncontroverted. Plaintiff Bishop was employed as a deliveryperson for defendant Lanter Delivery Systems, Inc. ("Lanter"). On May 7, 1996, while driving a vehicle on behalf of his employer, a "phantom" motorist suddenly veered into plaintiff's lane, forcing him off the roadway. As a result, plaintiff suffered extensive injuries to his right shoulder and arm.

On July 1, 1996, plaintiff filed a claim for workers' compensation benefits to recover damages for the injuries he sustained as a result of the accident. In his claim for workers' compensation benefits, plaintiff specified that he was claiming "compensation in accordance with the Workers Compensation laws of Kansas by reason of an accident which arose out of and in the course of my employment with [Lanter] on or about May 7, 1996." Thereafter, plaintiff and defendant Lanter entered into a stipulation agreement for the settlement of plaintiff's workers' compensation claim.

On May 6, 1998, plaintiff filed this action, claiming that he is entitled to uninsured motorist benefits to cover injuries sustained in the May 7, 1996 accident under the Motor Carrier Policy issued to Lanter by defendant Empire Fire & Marine. The parties filed cross summary judgment motions on the issue of the scope of insurance coverage. Plaintiff moves for partial summary judgment, seeking an order from this court declaring the applicable policy limits as $1,000,000 for uninsured motorist ("UM") coverage and $1,000,000 (or unbounded) for personal injury protection ("PIP") coverage. Defen-

dants move for summary judgment on the issue of plaintiff's entitlement to UM coverage, claiming that because plaintiff was injured in the course and scope of his employment, he is not eligible for any coverage under the liability policy issued by defendant Empire Fire & Marine ("Empire"). Alternatively, defendants move for partial summary judgment with respect to the issue of damages, claiming that the UM coverage available for bodily injury ("BI") is limited to the statutory minimum of $25,000, and that PIP coverage is limited to the statutory minimum amounts set forth in K.S.A. § 40–3103.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

Under Kansas law, "[a]s a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court." *Harris v. Richards,* 254 Kan. 549, 552, 867 P.2d 325, 327 (1994) (citation omitted). Where, as here, "the facts are admitted, then it is for the court to decide whether they come within the terms of the policy." *Id.*

### A. Availability of UM Benefits

It is uncontroverted that plaintiff was acting in the course and scope of his employment at the time of the accident. Defendants argue that recovery under the Motor Carrier Policy is unavailable because plaintiff falls within the policy's language excluding coverage for employees injured in the course and scope of their

employment.[1] In contrast, plaintiff contends that, rather than seeking coverage under the *liability* portion of the policy, plaintiff is seeking to collect damages under the policy's separate category of UM coverage. Thus, because it pertains only to limit the extent of defendants' liability coverage, plaintiff argues that the "scope of employment exclusion" does not bar plaintiff's recovery of UM benefits under the policy.

■ In Kansas, the statutory provision governing UM coverage is found at K.S.A. § 40–284. Section 40–284(a) requires all insurance liability policies issued with respect to motor vehicles registered or principally garaged in Kansas to include UM coverage. *Id.* Kansas courts have repeatedly noted that "[t]he purpose of uninsured motorist coverage is to compensate the innocent victim who is injured by an uninsured motorist." *Stewart v. Capps,* 14 Kan.App.2d 356, 357, 789 P.2d 563, 564 (1990) (citing *Patrons Mutual Ins. Ass'n v. Norwood,* 231 Kan. 709, 715–16, 647 P.2d 1335, 1339 (1982)). Toward that end, the uninsured motorist statute is to be "liberally construed to fulfill its intended purpose." *Id.*

■ Defendants insist that plaintiff may not recover under the Lanter/Empire policy because the injuries for which he seeks to collect damages resulted from an on-the-job accident, and therefore fall within the provision excluding liability for injuries sustained in the course of employment.

The court notes that defendants are correct in their assertion that an insured may lawfully exclude *liability* for injuries sustained within the course and scope of employment, *see* K.S.A. § 40–3107(i)(8), and that such an exclusion is unambiguously expressed in the policy at issue here. However, exclusions with respect to the insured's *liability* are inapposite to the determination of plaintiff's entitlement to UM coverage. The Empire policy does not exclude UM coverage for work-related injuries; instead, the "scope of employment" exclusion limits the insured's *liability* for on-the-job injuries. As such, the "scope of employment" exclusion, upon which defendants so emphatically rely to support their argument that plaintiff is unentitled to UM benefits under the policy, is inapplicable to limit plaintiff's coverage under the UM portion of the policy.[2]

The relevant portion of the policy governing the availability of UM coverage provides as follows:

## UNINSURED MOTORIST/UNDERINSURED MOTORIST COVERAGES

IT IS AGREED THAT THE NAMED INSURED HAS REQUESTED THAT UNINSURED MOTORIST COVERAGE AND/OR UNDERINSURED MOTORIST COVERAGE NOT BE PROVIDED UNDER THIS POLICY AND HAS AGREED TO REJECT THESE

1. Under the section entitled "Section II—LIABILITY COVERAGE," the policy provides, in pertinent part:
   B. EXCLUSIONS
   This insurance does not apply to any of the following:
   . . .
   4. Employee Indemnification and Employer's Liability. "Bodily injury" to
   a. An employee of the "insured" arising out of and in the course of employment by the "insured". . . .

2. The court notes that defendants make much of a statement within the policy which provides: "Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while en-

gaged in the course of their employment. . . ." Defendants offer this language to support their proposition that the policy, as a whole, is limited to liability only, and was designed to protect members of the general public, as opposed to Lanter's own employees, and thus that plaintiff's claim for UM benefits must fail. In making this argument, defendants misquote the above-quoted language of the policy, omitting a comma, and inserting an "and" such that the language is, arguably, more amenable to this "liability-only" interpretation. Contrary to defendants' argument, however, the Lanter/Empire policy provides UM coverage in addition to liability coverage, and it is under the UM portion of policy that plaintiff seeks to collect.

COVERAGES WHERE ALLOWED BY STATUTE. SHOULD SUCH REJECTION NOT BE ALLOWED IN ANY STATE, IT IS AGREED THAT THIS POLICY SHALL PROVIDE THE MINIMUM SPLIT LIMIT AMOUNT OF INSURANCE COVERAGE PRESCRIBED BY SUCH STATE STATUTE. SUCH COVERAGE SHALL APPLY ONLY TO AUTOS YOU OWN WHICH BECAUSE OF THE LAW IN THE STATE WHERE THEY ARE LICENSED OR PRINCIPALLY GARAGED ARE REQUIRED TO HAVE AND CANNOT REJECT UNINSURED MOTORISTS COVERAGE AND/OR UNDERINSURED MOTORIST COVERAGE.

As is evidenced by the policy's language, Lanter clearly rejected UM/UIM coverage in all jurisdictions in which a rejection of UM/UIM benefits was lawful, and limited its UM/UIM coverage to the minimum required by statute in all jurisdictions in which Lanter could not legally reject UM/UIM coverage. In Kansas, UM coverage is required by statute. K.S.A. § 40–284(a). Thus, Lanter's attempt to wholly reject UM coverage in Kansas was ineffective, and the scope of UM coverage available under the Lanter/Empire policy is therefore defined by the relevant Kansas statutory provisions.

Under Kansas law, any purported exclusion of UM coverage must comport with the provisions of K.S.A. § 40–284, the statute governing the mandatory provision of UM benefits. Section 40–284(e) provides a list[3] of six statutorily permissible exclusions that an insured may elect to restrict or otherwise limit the scope of its mandatory UM coverage. K.S.A. § 40–284(e). Under the facts of this case, defendant has not demonstrated that any of these exclusions are applicable to exclude plaintiff's UM coverage under the policy.[4] Accordingly, plaintiff is entitled to summary judgment with respect to the issue of availability of UM coverage under the Lanter/Empire policy.

### B. Extent of Uninsured Motorist Coverage

Plaintiff argues that any attempted rejection by defendants of the UM coverage equal to the BI limit was insufficient under K.S.A. § 40–284(c), and, therefore, that UM coverage in the amount of $1,000,000 (the full extent of liability coverage) is available. Defendants, on the other hand, argue that UM coverage in the amount equal to the BI limit was properly rejected under K.S.A. § 40–284(c), and thus that, if available at all, UM coverage is restricted to K.S.A. § 40–3107(e)'s statutory BI minimum of $25,000.

**3.** Subsection (e) of K.S.A. § 40–284 allows for the exclusion or limitation of UM coverage in the following instances:

(1) When the insured is occupying or struck by an uninsured automobile or trailer owned or provided for the insured's regular use;

(2) when the uninsured automobile is owned by a self-insurer or any governmental entity;

(3) when there is no evidence of physical contact with the uninsured motor vehicle and when there is no reliable competent evidence to prove the facts of the accident from a disinterested witness not making claim under the policy;

(4) to the extent that workers' compensation benefits apply;

(5) when suit is filed against the uninsured motorist without notice to the insurance carrier; and

(6) to the extent that personal injury protection benefits apply.
K.S.A. § 40–284(e).

**4.** The court notes that under Kansas law, duplicative workers compensation payments, *see* K.S.A. § 40–284(e)(4); *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 847 P.2d 1292 (1993), as well as duplicative PIP benefits, *see* K.S.A. 40–284(e)(6); *Rich v. Farm Bureau Mut. Ins. Co., Inc.*, 250 Kan. 209, 824 P.2d 955 (1992), if properly excluded, may be offset from UM damages. The court does not reach the issue of whether defendant Lanter properly excluded duplicative workers compensation or PIP payments under K.S.A. §§ 40–284(e)(4) and (6), however, as neither party has raised the issue, and it is not, therefore, properly before the court.

Section 40–284(a) mandates UM coverage equal to the limits of liability coverage for bodily injury or death stated in the policy. K.S.A. § 40–284(a). Section 40–284(c), however, allows the "insured named in the policy to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40–3107 and amendments thereto." K.S.A § 40–284(c). Section 40–3107(e) requires each policy to "contain stated limits of liability, exclusive of interest and costs, with respect to each vehicle for which coverage is granted, not less than $25,000 because of bodily injury to, or death of, one person in any one accident...." K.S.A. § 40–3107(e).

Defendants contend that Lanter's rejection of UM coverage in excess of the statutory minimum is clearly evidenced by the following: 1) the initial solicitation materials drafted by Robert Hilton, an agent acting on Lanter's behalf, clearly expressing Lanter's intent to limit its UM coverage to the statutory minimum; 2) an insurance coverage proposal prepared by J.W. Terrill Agency, an agent acting on Empire's behalf, specifically providing that UM coverage was not to exceed the statutory minimum; 3) a letter posted by Hilton to J.W. Terrill, confirming that UM coverage 'was included "only where mandatory and for statutory limit only;" 4) the final insurance binder form indicating that all UM coverage was rejected in all states where permitted under statute; and 5) an endorsement within the policy itself rejecting UM coverage where possible, but limit-ing any UM coverage required by state statute to the statutory minimum.

In contrast, plaintiff argues that Lanter's attempted rejection of UM coverage in excess of the statutory minimum was legally ineffective. Specifically, plaintiff contends that the case of *Larson v. Bath,* 15 Kan.App.2d 42, 801 P.2d 1331 (1990) requires that, under Kansas law, a rejection of UM coverage equivalent to BI limits must be (1) signed by an agent of the insured (2) on a proper form approved by the Commissioner of Insurance and (3) attached to the policy at its inception. Plaintiff cites K.S.A. § 40–216 as further support for its argument that any such ·rejection must be "signed on a form which has been filed with the Commissioner of Insurance and approved for use." [5]

The court agrees with plaintiff's contention that the decision in *Larson* controls the outcome on this issue. Contrary to plaintiff's characterization of *Larson* as requiring a rejection of UM coverage above the statutory minimum to be signed by the insured on a form approved by the Insurance Commissioner, however, the court concludes that *Larson* imposes no such requirements. Instead, it appears that *Larson* merely requires such rejections to be made by the insured *in writing.* Nothing in that case, nor in K.S.A. §§ 40–216 and/or 40–284(c), suggests to the court that the writing must be signed by the insured or be on an approved form.

The *Larson* court squarely held that,. under the facts of that case, the insured failed to satisfy "the statutory requirement for rejecting the higher UM limits in ac-

5. Section 40–216 provides:

No insurance company shall hereafter transact business in this state until certified copies of its charter and amendments thereto shall have been filed with and approved by the commissioner of insurance. A copy of the bylaws and *amendments thereto of* insurance companies organized under the laws of this state shall also be filed with and approved by the commissioner of insurance. The commissioner may also require the filing of such other documents and papers as are necessary to determine compliance with the laws of this state. No con-

tract of insurance or indemnity shall be issued or delivered in this state until the form of the same has been filed with the commissioner of insurance, nor if the commissioner of insurance gives written notice within thirty (30) days of such filing, to the company proposing to issue such contract, showing wherein the form of such contract does not comply with the requirements of the laws of this state; but the failure of any insurance company to comply with this section shall not constitute a defense to any action brought on its contracts.... K.S.A. § 40–216.

cordance with K.S.A. § 40–284(c). *The named insured did not reject in writing the higher UM limits."* *Id.* at 46, 801 P.2d at 1334 (emphasis added). In reaching its decision, the court reviewed several decisions from other jurisdictions to determine the purpose of imposing the "rejection in writing" requirement. *Id.* at 44–46, 801 P.2d at 1333–34. The *Larson* court explained that "[b]ecause the rejection provisions detract from the public policy goals of protecting innocent victims, the rejection provisions are narrowly and strictly construed by these same courts." *Id.* at 44, 801 P.2d at 1333.

■ Particularly instructive to the *Larson* court was the analysis set forth in *Patrick v. Cherokee Insurance Company*, 354 Pa.Super. 427, 512 A.2d 24 (1986). In *Patrick*, the court held an unsigned endorsement insufficient as a matter of law to constitute a "rejection in writing," noting that

> There must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it. . . . The statutory mandate may be complied with only by including uninsured motorist coverage or by affirmatively expressed rejection in writing by the insured.

*Id.* at 27. From the *Larson* court's reliance on the above-quoted language from *Patrick*, as well as *Larson*'s interpretation of K.S.A. § 40–284(c), the court derives the following legal principles: under Kansas law, any attempt to reject UM coverage in excess of the statutory minimum must be 1) in writing, as required by § 40–284(c), and 2) the product of an affirmative, unequivocal act specifically effectuating the insured's rejection of excess coverage.

■ Under the facts of this case, the court concludes that the original solicitation materials and subsequent insurance policy proposal evidence only an *intent* to limit UM benefits to the statutory minimum. Mere intent to reject, however, is insufficient under Kansas law. *Larson*, 15

Kan.App.2d at 44, 801 P.2d at 1333 ("where the UM statute has a written rejection requirement, something less is ineffective despite clear evidence of the insured's intent to reject the coverage.") Furthermore, in addition to imposing the requirement that any purported rejection of UM coverage in excess of the statutory minimum be in writing, the court reads *Larson* to require an "unequivocal and decisive act" on the part of the insured to reject UM coverage in excess of the statutory minimum. Consequently, because neither document was executed by Lanter or an agent acting on its behalf, the court finds both the final insurance binder, apparently generated by J.W. Terrill in its capacity as Empire's agent, as well as the endorsement purporting to reject UM benefits contained within the policy itself, a document also signed by a representative of J.W. Terrill, to be insufficient to constitute a lawful rejection of UM benefits in excess of the statutory minimum.

■ To the extent, however, that Mr. Hilton's letter confirming that UM coverage under the Lanter/Empire policy was to be provided "only where mandatory and for [the] statutory limit only," the court concludes that this letter is sufficient to . constitute a "rejection in writing" within the meaning of K.S.A. § 40–284(c). Neither party disputes Robert Hilton's authority to act as an agent on the behalf of Lanter. In fact, plaintiff refers the court to a portion of Mr. Hilton's deposition in which he testified that he is "the only person who has authority to execute these rejections on behalf of Lanter." There has been no issue of fact raised concerning the authenticity of the document itself. The confirmation document is, therefore, a writing on Lanter's behalf which unequivocally and decisively rejects UM benefits in excess of the statutory minimum. Accordingly, the UM coverage under the Lanter/Empire policy is limited to the statutory minimum for BI coverage mandated by K.S.A. § 40–3107, or $25,000.[6]

---

6. The court notes that, without any analysis, one commentator has cited the *Larson* opinion as requiring "a separate written rejection document setting forth a specific date and

## C. Availability of PIP Benefits

Under K.S.A. § 40–3107(f), every motor vehicle liability insurance policy issued to a Kansas insured shall

include personal injury protection benefits to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a motor vehicle, not exceeding the limits prescribed for each of such benefits, for loss sustained by any such person as a result of injury.

K.S.A. § 40–3107(f). Section 40–3103(q) defines "personal injury protection benefits" as

the disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits and survivors' benefits required to be provided in motor vehicle liability insurance polices pursuant to this act.

K.S.A. § 40–3103(q). Sections 40–3103(b), (k), (r), and (w) set forth the statutory minimum amounts for disability benefits, medical benefits, rehabilitation benefits, and substitution benefits, respectively.[7]

■ In his papers, plaintiff argues that because the Lanter/Empire policy sets forth no provision for PIP benefits, the insurer's liability therefor must either be unbounded, or at least equal to $1,000,000, the extent of liability coverage under the policy. Defendants contend that unlike K.S.A. § 40–284's provision that a failure to reject UM coverage creates UM coverage equivalent to the policy's liability limits, K.S.A. § 40–3107(f)'s requirement of PIP coverage imposes no such condition. Thus, defendant maintains, the amount of PIP coverage available to plaintiff, if at all, is limited to the statutory minimum amounts for each category of PIP benefits prescribed by K.S.A. § 40–3103.

This appears to be a matter of first impression under Kansas law and neither party presents authority to help guide the court. Under the facts and circumstances of this case, the court concludes that the extent of PIP benefits available to plaintiff under the Lanter/Empire policy is limited to the statutory minimum amounts set forth in K.S.A. § 40–3103. It is clear to the court that Lanter's purpose in purchasing the Lanter/Empire policy was primarily to provide coverage for liability to third parties. Indeed, Lanter's specific rejection of UM/UIM coverage wherever possible, and where not possible, its limitation of UM/UIM coverage to the statutory minimum is strong evidence that Lanter was attempting to limit its insurance coverage to the least amount permissible by law with respect to potential first party claims. Had Lanter been presented the opportunity by its insurer to limit its PIP coverage to the statutory minimums, it seems virtually certain that it would have. Instead, it appears that there was no consideration of PIP coverage at all and the treatment by the parties was as if none had been purchased. In light of the fact, then, that no premiums were received by Empire in return for PIP coverage, and in the absence of any evidence of bad faith or overreaching on the part of Empire, the court finds no reason to penalize Empire by requiring it to pay PIP benefits above the statutory minimum amounts required by K.S.A. § 40–3103. Accordingly, the court concludes that plaintiff is entitled to PIP coverage only to the extent required by K.S.A. § 40–3103.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion

---

policy number, signed by the insured before the insurance company can issue an automobile policy with uninsured/underinsured limits lower than its liability limits." Gerald W. Scott, *Uninsured/Underinsured Motorist Insurance: A Sleeping Giant*, 63 J. KAN. B.A. 28, 30 (1994). The court does not read *Larson* to impose such requirements, and therefore dis-

agrees with this characterization of its holding.

7. The court notes that §§ 40–3103(d) and (y) set forth the definitions of "funeral benefits" and "survivors' benefits," but neither type of benefits is implicated in this case.

**1308**

for summary judgment, or in the alternative, for partial summary judgment (doc. 28) and plaintiff's motion for partial summary judgment (doc. 32) are each granted in part and denied in part. Specifically, plaintiff's motion is granted, and defendants' motion denied, to the extent that the court finds plaintiff entitled to uninsured motorist coverage under the policy. The court finds that the amount of uninsured motorist coverage available is limited to the statutory minimum of $25,000, and thus plaintiff's motion is denied and defendants' motion granted with respect to that issue. Finally, the court concludes that to the extent that personal injury protection benefits are available under the policy, such benefits are limited to the statutory minimum amounts prescribed by statute, and thus grants defendants' motion, and denies plaintiff's motion with respect to that issue.