MICHAEL P. MITCHELL, *Appellee/Cross-appellant*, v. LIBERTY MUTUAL INSURANCE COMPANY, *Appellant/Cross-appellee*, and SHELTER MUTUAL INSURANCE COMPANY, *Appellee/Cross-appellee*.

No. 79,263

MICHAEL P. MITCHELL, *Appellant*, v. LIBERTY MUTUAL INSURANCE COMPANY, *Appellee*, and SHELTER MUTUAL INSURANCE COMPANY, *Defendant*.

(961 P.2d 1235)

Opinion filed July 10, 1998.

*Robert G. Herndon*, of Robert G. Herndon, P.A., of Overland Park, argued the cause, and *Kurt A. Level*, of the same firm, was with him on the briefs for appellee/cross-appellant.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Sean T. McGrevey*, of the same firm, was with him on the briefs for appellant/cross-appellee.

*Craig C. Blumreich*, of Gehrt & Roberts, Chartered, of Topeka, argued the cause and was on the brief for appellee/cross-appellee.

The opinion of the court was delivered by

DAVIS, J.: This appeal involves a contest between insurance carriers; the issue raised is which of two carriers is excess in its underinsurance coverage. Michael P. Mitchell was severely injured in an automobile collision while driving a United Parcel Services (UPS) van in the course of his employment. His personal vehicle coverage with Shelter Mutual Insurance Company (Shelter) provided underinsured coverage, and UPS also carried underinsured

coverage through Liberty Mutual Insurance Company (Liberty). Mid-Century Insurance Company (Mid-Century), the tortfeasor's insurer, paid its policy limits of $50,000, and a lawsuit proceeded in the underlying liability action. Shelter elected to join, Liberty did not.

The question raised involves the procedure to be followed in the determination of which of the two carriers is excess under underinsured motorist coverage when one or both of the underinsured carriers elects not to intervene in the underlying liability action. May the court in that action compel joinder and resolve this question in the liability action, or must a separate lawsuit be brought against both carriers after the underlying liability question is resolved? We hold that a separate lawsuit against both carriers after completion of the underlying liability action is required. We, therefore, dismiss for lack of jurisdiction.

On November 1, 1991, a UPS van driven by Mitchell in the course of employment collided with a station wagon driven by Loretta Mattson. Mitchell filed suit against Mattson, who was insured by Mid-Century. UPS intervened to protect and enforce its statutory lien rights for workers compensation benefits paid to Mitchell.

Mid-Century tendered Mattson's policy limits in the amount of $50,000. Mitchell's personal automobile insurance carrier, Shelter, and UPS' carrier, Liberty, were notified by Mitchell that he would be instituting an underinsured motorist claim against them. Both were given the option of intervening in the action or substituting payment under the provisions of K.S.A 40-284(f). Neither carrier opted to substitute payment. Shelter intervened in the liability and damages action filed by Mitchell, but Liberty chose not to intervene. As one of its defenses, Shelter claimed its underinsured motorist coverage was secondary and excess to the coverage provided by Liberty.

Pursuant to a settlement agreement in the liability and damage action among Mitchell, Mattson, UPS in its capacity as a lien claimant for payment of workers compensation benefits to Mitchell, and Shelter, Mattson's liability was admitted and damages were stipulated to be $950,000 in the following amounts:

"A. Past income and earning capacity loss in an amount at least equal to: $100,000.00

B. Future income and earning capacity loss in an amount at least equal to: $460,000.00

C. Loss of ability to perform services to and for the benefit of his spouse and his family in an amount at least equal to: $63,000.00

D. Past medical expenses in an amount of approximately: $17,000.00

E. Past and future pain, suffering and mental anguish, along with permanent bodily disability at least equal to: $250,000.00

F. Past and future loss of consortium in an amount at least equal to: $60,000.00."

On March 29, 1995, the trial court, therefore, entered judgment for Mitchell in the amount of $950,000.

UPS argued to the trial court that it could not determine whether Liberty or Shelter's underinsured motorist coverage was primary because Liberty was not a party to the lawsuit. The trial court determined that Mitchell should be allowed to amend his petition to include Liberty as a defendant so that the trial court could then resolve the remaining issue of which carrier, Shelter or Liberty, provided the primary underinsurance motorist coverage for Mitchell.

Mitchell filed an amended petition naming Liberty and Shelter as parties to the lawsuit. Liberty answered, denying liability on the following bases: (1) The trial court was without jurisdiction because the damage and liability lawsuit had already been concluded and a new lawsuit against Shelter and Liberty must be commenced; (2) Liberty owed no underinsured coverage because its coverage was a minimum of $25,000 per person and below the $50,000 paid to settle Mitchell's claim against Mattson; (3) comparative fault should reduce the damages; and (4) the settlement agreement was collusive and not binding on Liberty because it was entered without Liberty's consent.

Mitchell filed a motion for summary judgment, asking the trial court to conclude that UPS did not properly file its written rejection of underinsurance coverages equal to its liability coverage under K.S.A. 40-284(c) and Kansas Insurance Commissioner Bulletin 1981-20. Mitchell argued that Liberty's policy therefore provided underinsurance coverage in an amount equal to its liability coverage of a minimum of $3,000,000 and was primary. The trial court

agreed and awarded summary judgment in favor of Mitchell against Liberty. Liberty appeals; Mitchell cross-appeals. The court reserved the issue of attorney fees under K.S.A. 40-256 and later resolved this issue against Mitchell. Mitchell appeals.

Discussion and Analysis

Under K.S.A. 40-284(b), uninsured motorist coverage must include an underinsured motorist provision with coverage limits equal to the uninsured provision. Under K.S.A. 40-284(a), the policy limits of an uninsured motorist provision must be equal to the liability coverage in the insurance policy. Kansas law thus requires that underinsured motorist coverage in an automobile policy must have coverage limits equal to the liability coverage of the policy. However, K.S.A. 40-284(c) provides that the insured has the right to reject uninsured and underinsured motorist coverage in excess of the minimum required by law, *vis.*, $25,000 per person/$50,000 per accident. In order to properly reject underinsured motorist coverage in excess of the minimum required by law, the insured must provide a written rejection to its insurer. Kansas law provides that once such written rejection has been sent, the insurer need not include excess insurance in any subsequent policy of the insured unless the insured specifically requests such excess coverage in writing. K.S.A. 40-284(c).

The primary dispute between Shelter and Liberty and the major dispute upon motion for summary judgment centered upon Shelter's contention that UPS, although it may have attempted to reject excess underinsured coverage, did not do so under law. Thus, according to Shelter, Liberty's underinsured coverage was in excess of $3,000,000, the same as its liability coverage. Because Shelter's policy provided for primary underinsured coverage on a vehicle insured by its policy but provided only excess for other vehicles driven by its insured, Shelter claimed that Liberty's insurance was primary.

The parties spent considerable time in discovery, in the motion for summary judgment, and in their respective briefs on appeal on the question of whether UPS rejected underinsured motorist coverage in excess of the minimum required by law. However, we

need not address the question because we determine that the trial court did not have jurisdiction to resolve the questions of underinsured motorist coverage under the Shelter and Liberty policies.

This court discussed the procedure to be followed in actions involving an underinsured motorist in *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). In that case, Haas sued Freeman in tort for damages he sustained in an automobile accident involving both parties. Haas' insurer, Horace Mann Insurance Company, was joined as a party defendant under the underinsured motorist provisions of K.S.A. 40-284. The trial court dismissed the insurance company. On interlocutory appeal, the primary issue raised was whether a plaintiff's insurance company may be included in an action against a tortfeasor when the tortfeasor is an underinsured motorist.

After considering prior decisions from other jurisdictions and the policy in this state against multiple litigation, the court determined:

"[U]nderinsured motorist claims are sufficiently distinguishable from uninsured motorist claims to require different procedures. In the underinsured motorist case there is always an active opposing party and his insurer. Also the fact of underinsurance is an unresolved issue. To require both insurance carriers to be party defendants would present a confusing panorama to the jury and could so overemphasize the insurance feature of the lawsuit the real issues would become unimportant. For these reasons we hold in an action involving an underinsured motorist, the parties shall proceed as follows:

"When the litigant determines the opposing party's liability coverage is below the litigant's liability coverage as well as the amount of damages claimed, and he wishes to invoke the underinsured motorist clause of his insurance policy, he shall notify his insurance carrier in the manner prescribed in the insurance policy.

"The insurance company may then intervene in the case at its election. If it elects to intervene, it shall be a named party to the action. If the insurance company elects not to intervene, K.S.A. 60-454 is applicable. In either case the litigant's underinsured motorist insurance carrier is bound by any judgment obtained in the action." 236 Kan. at 683.

We revisited *Haas* in *Ramsey v. Chism*, 249 Kan. 299, 817 P.2d 198 (1991), which involved an interlocutory appeal from a tort action brought by the Ramseys against Chism for injuries they suffered in an automobile accident. The Ramseys' automobile liability insurer, Shelter, was joined as a party defendant under the underinsured motorist provision of K.S.A. 40-284. Shelter appealed the

trial court's ruling that it was a proper party to the action. The issue presented was whether an insured is precluded from joining his or her underinsured motorist carrier in an action against the under-insured tortfeasor when liability and damages are not at issue but contract issues are in dispute.

The Ramseys argued that the procedure established in *Haas* did not apply because Chism's insurance carrier had offered to settle the claim and, thus, there was no disputed issue concerning liability or the amount of damages. The Ramseys alleged that it would be inequitable and a violation of substantial justice to require them to bring a lawsuit against Chism and obtain a judgment before they could bring a second lawsuit against Shelter to recover underinsured motorist benefits.

Among other arguments, Shelter contended that it had exercised its statutory option not to intervene in the tort action. Accordingly, it claimed that the Ramseys must complete their tort action before pursuing any contract claims and were prohibited from mixing the issues in a single lawsuit. We concluded in *Ramsey*:

"The conflict between the Ramseys and Shelter was contemplated by this court in *Haas* and was the basis for rejecting the argument that joinder is preferred over multiple litigation. In *Haas, we found that an underinsured motorist carrier should not be joined in the tort action where underinsurance remained an unresolved issue.* 236 Kan. at 682. Underinsurance and Chism's policy limits quite definitely remain unresolved in the present action. In addition, Chism and Travelers are active parties in the lawsuit, another reason provided in *Haas* for not allowing joinder. Finally, the presence of Travelers and Shelter in the same suit would naturally and prejudicially emphasize the insurance feature of this lawsuit. *The distinct features of an underinsured motorist claim preclude the accomplishment of substantial justice through a single lawsuit and must allow the possibility of multiple litigation to preserve the rights of all parties involved.* For these reasons, we hold *Haas* is applicable to the present action." (Emphasis added.) 249 Kan. at 303.

Liberty, in this case, elected not to join in the damage and liability action filed by Mitchell against the tortfeasor. Not unlike the factual situation in *Ramsey*, all parties except Liberty agreed to settle the liability and damage claims. However, underinsurance remained an unresolved issue in the case. Does it make a difference that in this case judgment has been entered on the liability and

damage claims of the plaintiff? We think not, for as this court stated in *Haas* and reiterated in *Ramsey,* an underinsured motorist carrier should not be joined in the tort action where underinsurance remains an unresolved issue. See 249 Kan. at 303.

Mitchell argues that there is no reason to apply the procedure set forth in *Haas* because liability and damages have been resolved by entry of judgment in the tort action. Thus, the opposing tortfeasor and insurance carrier are not actively involved in the underinsured motorist action; nor would joinder of Liberty after judgment confuse a jury and overemphasize the insurance feature of the lawsuit. See *Haas,* 236 Kan. at 682. However, as Liberty points out, at this point there is no final judgment in the liability and damage lawsuit. Thus, subject to the trial court's discretion, liability and damages may be set aside for any number of reasons, raising the possibility that the opposing tortfeasor and insurance carrier might be actively involved in the underinsured motorist action, which may result in confusion or overemphasis of insurance in the liability phase of the lawsuit as a result.

The distinct features of an underinsured motorist claim preclude the accomplishment of substantial justice through a single lawsuit and must allow the possibility of multiple litigation to preserve the rights of all parties involved. *Ramsey,* 249 Kan. at 303. This procedure is consistent with Kansas law involving intervention in cases of underinsured motorist coverage. In *Guillan v. Watts,* 249 Kan. 606, 822 P.2d 582 (1991), this court considered at great length the rules regarding the intervention or nonintervention of insurers and its effect on judgment. We stated:

"In an action involving an underinsured motorist, if the insured invokes the underinsured motorist clause of his automobile insurance policy and notifies his insurance carrier in the manner prescribed in the insurance policy, the insurer has the election to intervene in the action. If the insurer elects to intervene, it becomes a named party to the action. However, if the tortfeasor subsequently agrees to confess judgment after the insurer has intervened, the confession or agreement is conclusive only as to the parties to the agreement and is not binding upon the insurer even though the insurer would have been bound by the judgment had it been obtained as a result of the trial." 249 Kan. 606, Syl. ¶ 2.

However, where the insurer is notified and refuses to intervene, the insurer is bound by the judgment whether the judgment is by

trial or based on a proper settlement agreement between the parties to the action and approved by the court. 249 Kan. 606, Syl. ¶ 5.

We refuse to adopt a rule casting doubt upon the procedures established in *Haas* and *Ramsey* where there has been an attempt to join an underinsured motorist carrier in the insured's tort action for liability and damages. We are not unmindful of our past decisions regarding multiple litigation. However, we continue to recognize that the distinct features of an underinsured motorist claim precludes the accomplishment of substantial justice through a single lawsuit and must allow the possibility of multiple litigation to preserve the rights of all parties involved.

The partial judgment entered by the trial court in this case on March 29, 1995, disposed of all issues in the tort action filed by Mitchell. The only remaining action required by the trial court was the entry of final judgment. Instead, the trial court, without jurisdiction, allowed Mitchell to amend his petition and join Liberty in the tort action. We have no jurisdiction to consider any orders entered by the trial court after its March 29, 1995, order. We, therefore, dismiss for lack of jurisdiction. The contractual questions of whether Liberty or Shelter is primary for underinsured motorist coverage purposes must be resolved in a separate lawsuit after entry of final judgment in the tort action.

Dismissed for lack of jurisdiction.