(221 P.3d 622)
No. 101,562

SCOTT OCHS, *Appellant*, v. FEDERATED MUTUAL INSURANCE COMPANY, *Appellee.*

Opinion filed January 8, 2010.

*Matthew L. Bretz, Mitchell W. Rice,* and *Chelsea S. Boldra*, of Bretz Law Offices, LLC, of Hutchinson, for appellant.

*Richard W. James* and *Dustin L. DeVaughn,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before GREENE, P.J., MALONE, J., and KNUDSON, S.J.

KNUDSON, J.: Scott Ochs appeals the trial court's grant of summary judgment in favor of Federated Mutual Insurance Company (Federated Mutual) that denied Ochs' claim for underinsured motorist coverage for a motor vehicle accident. Ochs also appeals the

trial court's denial of his motion for summary judgment. The facts are not in dispute.

Ochs was driving a propane truck for his employer, Ramsey Oil Hutchinson, Inc. (Ramsey Oil), on July 12, 2004, when he was seriously injured in a motor vehicle accident involving an alleged negligent third party, Loren L. Hayden. Subsequently, Ochs reached a monetary settlement with Hayden's insured, State Farm Insurance, in the amount of $50,000.

Ochs had a personal automobile policy with Farm Bureau Insurance Company, with which he settled his underinsured motorist claim in the amount of $50,000.

Ochs then filed this action against Federated Mutual, the automobile liability insurance company for his employer Ramsey Oil, seeking additional underinsured motorist benefits. On the day of the accident, Ramsey Oil's policy with Federated Mutual was policy 9181626, with a liability limit of $1,000,000. The issue before the trial court was whether the Federated Mutual policy provided underinsured motorist benefits of $1,000,000 as contended by Ochs or $50,000 as contended by Federated Mutual.

Federated Mutual had been Ramsey Oil's automobile liability insurance carrier from at least April 1, 1999. On May 20, 1999, Ramsey Oil's president and sole stockholder, Loren Alderson, signed a document provided by Federated Mutual entitled KANSAS COMMERCIAL AUTO COVERAGE OPTION FORM selecting lower amounts of uninsured and underinsured motorist coverage than that equal to the bodily injury limit of liability amount. Alderson chose to limit underinsured motorist benefits for directors, officers, partners, owners, and qualifying family members of the named insured to $500,000 and for other persons qualifying as an insured to $50,000. Alderson acknowledged:

"I have been given the opportunity to purchase Uninsured Motorists Coverage (including Underinsured Motorists Protection) equal to my limit of liability for bodily injury or death, and instead I select the lower $50,000 limit.

"I understand and agree that this rejection of higher limit of Uninsured Motorists and Underinsured Motorists Coverage shall be applicable unless I subsequently request such coverage in writing."

The option form stated the applicant or policy holder was "Ramsey Oil Hutchinson, Inc.," and that the election applied to "All

Covered Automobiles." The policy number on the option form was 9181578, consistent with Ramsey Oil's automobile liability policy in effect at the time.

Both parties filed motions for summary judgment. The trial court granted Federated Mutual's motion, concluding the option form met the requirements of K.S.A. 40-284(c) and was executed by an authorized employee of Ramsey Oil. Ochs has filed a timely appeal. Before us, the parties agree summary judgment was a proper remedy. They disagree as to whom summary judgment should have been granted.

*Our Standard of Review*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009). Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 240, 201 P.3d 680 (2009).

The interpretation of a statute is a question of law that affords an appellate court unlimited review. See *Mitchell v. Liberty Mut. Ins. Co.*, 271 Kan. 684, 690, 24 P.3d 711 (2001). The interpretation of an insurance contract is likewise a question of law over which an appellate court has unlimited review. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003).

*Statutory Requirements For Underinsured Motorist Coverage*

K.S.A. 40284 provides:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner

or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. No insurer shall be required to offer, provide or make available coverage conforming to this section in connection with any excess policy, umbrella policy or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle.

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

"*(c) The insured named in the policy shall have the right to reject, in writing, the uninsured motorist coverage required by subsections (a) and (b) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107 and amendments thereto. A rejection by an insured named in the policy of the uninsured motorist coverage shall be a rejection on behalf of all parties insured by the policy. Unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in any subsequent policy issued by the same insurer for motor vehicles owned by the named insured, including, but not limited to, supplemental, renewal, reinstated, transferred or substitute policies where the named insured had rejected the coverage in connection with a policy previously issued to the insured by the same insurer.*" (Emphasis added.)

K.S.A. 40-3107(e) provides that every motor vehicle liability insurance policy issued to owners who are Kansas residents must contain liability limits for each covered vehicle of no less than $25,000 because of bodily injury or death of one person in any one accident or no less than $50,000 because of bodily injury or death of two or more persons in any one accident.

Under these statutes, then, an insurer must provide underinsured motorist coverage equal to the amount of liability coverage provided in the policy unless the insured rejects in writing coverage in excess of the amounts provided in K.S.A. 40-3107(e). In this case, Federated Mutual was required to provide Ramsey Oil with underinsured motorist coverage of $1,000,000 unless the option form signed by Alderson is held to be valid.

*Discussion of Issues Presented By Ochs*

1. *Does Loren Alderson's failure to indicate his corporate capacity and authority as an agent on the face of the option form render the limitation of underinsured motorist coverage ineffective?*

A corporation is generally bound by contracts entered into by its duly authorized officers or agents acting within the scope of their authority. *Executive Financial Services, Inc. v. Loyd,* 238 Kan. 663, Syl. ¶¶ 2-3, 715 P.2d 376 (1986). Ochs acknowledges Alderson was president of Ramsey Oil and authorized to sign the option form on behalf of the corporation. His contention is that Alderson's signature, absent indication of any representative capacity, does not meet that requirement. Ochs relies on *Larson v. Bath,* 15 Kan. App. 2d 42, 801 P.2d 1331, *rev. denied* 248 Kan. 996 (1990), and *Jankord v. Lin,* 32 Kan. App. 2d 1255, 96 P.3d 692 (2004), for support.

In *Larson,* the court recognized that the insured named in the automobile liability policy has the right to reject, in writing, the uninsured and underinsured motorist coverage required by K.S.A. 40-284 that is in excess of the limits for bodily injury or death set forth in K.S.A. 40-3107. The court held there was no evidence the insured met the statutory requirement for rejecting underinsured motorist coverage where no rejection form was attached to the policy. 15 Kan. App. 2d at 43, 46. Thus, *Larson* did not address the issue now presented.

In *Jankord,* the court held that a mechanic's lien was invalid because the subcontractor's manager failed to indicate on the lien statement that his signature was in a representative capacity for the subcontractor. 32 Kan. App. 2d at 1256-58. The court recognized that for a mechanic's lien to attach the requirements of K.S.A. 60-1102 must be strictly met. 32 Kan. App. 2d at 1257.

Undoubtedly, strict construction is appropriate in mechanic's lien law cases because the lien, once it attaches, clouds the legal title of the landowner and takes priority over all subsequent encumbrances. K.S.A. 60-1101. Because a mechanic's lien is a creature of statute and, in the case of a subcontractor, may attach without benefit of contract between the subcontractor and the owner,

requirements of verification must be rigidly enforced. See *Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co.*, 194 Kan. 634, 400 P.2d 707 (1965). Because our mechanic's lien laws are a specific and unique category of law with unique rules and procedures, we are not persuaded *Jankord* gives us a legal roadmap to follow in deciding the issue on appeal in this case.

In *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 983 P.2d 853 (1999), the court considered whether a K.S.A. 40-284(c) rejection form was sufficient. Although the effectiveness of the representative's signature on the form was not an issue directly raised in *McTaggart*, the *McTaggart* court upheld the form, which listed "Transam Trucking, Inc." as the named insured and was signed by "Bert Hicks," presumably an authorized agent for Transam Trucking, Inc. Left blank was the line that provided: "By (title if other than an individual)." 267 Kan. at 648. The court concluded the written rejection form was "signed by a duly authorized agent of the named insured" and was "executed by an authorized employee." 267 Kan. at 650-51. The court cited *Ridgway v. Shelter Ins. Co.*, 22 Kan. App. 2d 218, 913 P.2d 1231, *rev. denied* 260 Kan. 995 (1996), noting that an agent of the named insured who is authorized to purchase insurance may also have authority to reject excess underinsured motorist coverage under K.S.A. 40-284(c). *McTaggart*, 267 Kan. at 649-50.

In *Ridgway*, this court held that the girlfriend of the insured had authority as an agent to reject excess underinsured motorist coverage. 22 Kan. App. 2d at 223-24. The court reasoned that absent an express statement by the legislature indicating otherwise, the Kansas Insurance Code permits a named insured to give an agent authority to reject excess underinsured motorist coverage. 22 Kan. App. 2d at 223. The court noted that there is no evidence the legislature intended to abrogate principles of agency law and rejected the argument that *Larson* controls the issue. *Ridgway*, 22 Kan. App. 2d at 222 (citing *Larson*, 15 Kan. App. 2d 42).

We are of course aware that because the rejection provisions of K.S.A. 40-284(c) detract from the public policy goals of protecting innocent victims, the rejection provisions are to be narrowly and strictly construed. See *Larson*, 15 Kan. App. 2d at 44 (although

construing K.S.A. 40-284[c] was not necessary in view of the plain language of the statute that requires a written rejection). Nonetheless, strict construction should not be invoked to circumvent application of an election under K.S.A. 40-284(c) that is apparent from the four corners of the underlying insurance agreement and the option form signed by Alderson. We believe that the agreement and the option form show unequivocally that Alderson acted in an authorized representative capacity.

It is plain on the face of the option form that the name of the applicant or policyholder is Ramsey Oil and that the option to be exercised applies to policy 9181578, the underlying insurance agreement with Ramsey Oil. In addition, there is no dispute that Alderson as president of the company and its sole stockholder had the legal authority to act on its behalf and sign the option form as its agent. Alderson also stated in an affidavit that he executed the rejection form on behalf of Ramsey Oil and chose to limit underinsured motorist coverage. We conclude Alderson's signature on the option form is not reasonably subject to confusion or ambiguity when considered with the underlying insurance agreement, the other information on the face of the option form, and Ochs' acknowledgement of Alderson's capacity and authority to act on behalf of Ramsey Oil. The option form bound Ramsey Oil to the terms of the agreement and resulted in reduced underinsured motorist coverage.

## 2. *Is a propane truck an automobile to which the signed option form applies?*

Ochs contends that even if we determine the option form signed by Alderson constitutes a coverage rejection, the rejection does not apply because Ochs was driving a truck, not an automobile, when the accident occurred. Ochs argues the option form only applies to "Covered Automobiles" and K.S.A. 40-298 defines automobiles to exclude trucks. *Cf.* K.S.A. 2008 Supp. 8-126(c) and (x).

"Auto" is defined in the Federated Mutual policy with Ramsey Oil to mean "a land motor vehicle." Ochs does not argue that the truck was not an automobile within the definition of the policy. Instead, he ignores the terms of the insurance policy and relies

upon K.S.A. 40-298 to conclude the propane truck was not an automobile within the meaning of the option form.

An insurance agreement is a contract subject to agreement of the parties, and its terms, including definitions, will control so long as not in conflict with statutes or public policy. See *Gibson v. Metropolitan Life Ins. Co.*, 213 Kan. 764, 518 P.2d 422 (1974); *Merritt v. Farmers Ins. Co.*, 7 Kan. App. 2d 705, 647 P.2d 1355 (1982).

Here, Federated Mutual could have chosen to exclude trucks from the policy definition of automobiles but did not do so and its more expansive definition is not in conflict with Kansas law. See *Western Casualty & Surety Co. v. Budig*, 213 Kan. 517, 519, 522, 516 P.2d 939 (1973) (holding where insurance policy defines "automobile" in the broader generic sense as a "motor vehicle," a motorcycle is included absent an exclusionary provision to the contrary). Consequently, we hold the truck driven by Ochs was a covered automobile within the meaning of the insuring agreement and the coverage option form signed by Alderson.

### 3. *Does the executed option form apply to the insuring agreement in effect at the time of Ochs' accident?*

Ochs argues the option form does not apply in this case because the option form only operated to reject excess underinsured motorist coverage for policy 9181578, not 9181626—the policy in effect on the date of the accident. This argument is without legal merit.

As previously noted, Federated Mutual has continuously provided automobile liability insurance to Ramsey Oil since April 1, 1999. K.S.A. 40-284(c) specifically provides that a written rejection applies to any subsequent policy issued by the same insurer for motor vehicles owned by the named insured. See *Mitchell*, 271 Kan. 684, Syl. ¶ 2; *Phillips v. St. Paul Fire & Marine Ins. Co.*, 39 Kan. App. 2d 758, 761-64, 184 P.3d 280 (2008), *aff'd* 289 Kan. 521, Syl. ¶ 3, 213 P.3d 1066 (2009).

Ochs does not claim that policy 9181626 and policy 9181578 were made between different parties. Ochs does not dispute that the coverage under these two policies was virtually the same. There is no evidence Ramsey Oil requested additional underinsured mo-

torist coverage after it executed the option form. It is undisputed policy 9181626 merely replaced the prior policy due to a subsequent contract between the same parties. Thus, under the explicit language of K.S.A. 40-284(c), Ochs' argument fails.

### 4. *Did Ramsey Oil through its authorized representative Alderson intend to limit underinsured motorist coverage?*

Ochs' final argument is that Ramsey Oil did not intend to reject excess underinsured motorist coverage. We note Ochs does not contend summary judgment should not have been granted because there remained a disputed question of fact as to Alderson's intent to waive underinsured motorist coverage on behalf of Ramsey Oil. An issue not briefed by an appellant is deemed waived or abandoned. *Kingsley v. Kansas Dept. of Revenue,* 288 Kan. 390, 395, 204 P.3d 562 (2009).

Thus, we understand the argument to be that Alderson testified unequivocally his intent was not to reduce underinsured motorist coverage. This argument fails to appropriately consider Alderson's testimony in its entirety. In his deposition, Alderson testified he believed the significance of the option form was that he was selecting the amount of liability insurance for him and his employees, and later agreed the option form was "the amount of liability coverage." Nevertheless, Alderson also stated he did not remember seeing the exact form, did not remember every form he filled out, and agreed the form appeared to be a selection of coverage for himself, as an officer, and employees. Alderson testified the Federated agent was thorough and spent a great deal of time explaining the coverage. Alderson stated he was sure he was told exactly what he was signing and what the form meant at the time. Alderson stated the option form made it "absolutely clear" that the limit for directors, officers, partners, and owners was $500,000 and that the limit for other qualifying persons was $50,000. Alderson testified he could not say he did not understand the option form when he signed it. Alderson believed the option form was "a selection of the coverage that I made and that would be a reasonable number to have more on the officers because of the debt incurred there."

Based on the above testimony, the trial court found that Alderson intended to reduce coverage for underinsured motorist coverage when signing the option form. We agree but would suggest the following to be a more appropriate analysis.

The terms of the signed coverage option form became a part of the insurance agreement between the parties. "Where an insurance contract is not ambiguous, the courts will not make another contract for the parties but will enforce the contract as written." *Jones v. Reliable Security, Inc.*, 29 Kan. App. 2d 617, 627, 28 P.3d 1051, *rev. denied* 272 Kan. 1418 (2001). Additionally, it is not the intent of the insurer as to what the language of a policy means, it is what a reasonably prudent insured would understand the language to mean. *Hodgson v. Bremen Farmers' Mut. Ins. Co.*, 27 Kan. App. 2d 231, Syl. ¶ 1, 3 P.3d 1281, *rev. denied* 268 Kan. 886 (1999). We hold the option form signed by Alderson is unambiguous and a reasonably prudent insured would understand the provisions of the form to mean approval by the insured would constitute an election to accept lower underinsured motorist coverage limits.

*Conclusion*

We hold under the uncontroverted facts of this case: (1) Alderson's approval and signature on the coverage option form was authorized by Ramsey Oil and constituted a binding election in compliance with K.S.A. 40-284(c); (2) Ramsey Oil's propane truck was an automobile as defined in the Federated Mutual insurance policy and that definition controls and is not precluded by the more limited definition of an automobile in K.S.A. 40-298; (3) the written rejection of underinsured motorist coverage by Ramsey Oil in conjunction with a previous automobile policy issued by Federated Mutual controls because the insured named in the policy has made no subsequent request in writing for additional coverage; and (4) a reasonably prudent insured would have understood the provisions of the option form to be an election to accept a lower limit for underinsured motorist coverage than the limit equal to the bodily injury liability limit of the policy.

Accordingly, we affirm the district court's grant of summary judgment in favor of Federated Mutual and its denial of summary judgment to Ochs.

Affirmed.