No. 122,701

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROGER W. MCLEAN, in His Capacity as the Special Administrator of the Estate of Roger
G. Yarbro Sr., and Clyde David Yarbro,
*Appellants/Cross-appellees*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.,
*Appellee/Cross-appellant*.

SYLLABUS BY THE COURT

1.

The overall purpose of K.S.A. 40-284, the statute mandating uninsured and underinsured motorist coverage in all automobile policies, is to fill a gap in motor vehicle financial responsibility and compulsory insurance legislation. The coverage is intended to compensate innocent persons who are damaged through the wrongful conduct of a motorist who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages.

2.

K.S.A. 40-284 is remedial. It should be liberally construed to provide broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident where those damages are caused by the acts of an uninsured or underinsured motorist. The insurance policy containing the coverage is controlling only to the extent it does not conflict with or attempt to diminish or omit statutorily mandated coverage.

1

3.

Kansas law requires that underinsured motorist coverage in an automobile policy must have coverage limits equal to the liability coverage of the policy. K.S.A. 40-284(b).

4.

The named insured has the right to reject, in writing, the uninsured and underinsured motorist coverages required by subsections (a) and (b) which exceeds the Kansas minimum limit of $25,000. Any attempt to reject uninsured coverage in excess of the statutory minimum must be (1) in writing, as required by K.S.A. 40-284(c), and (2) the product of an affirmative, unequivocal act specifying the insured's rejection of excess coverage.

5.

When the terms of an insurance policy are ambiguous, the ambiguity is construed against the insurance company. Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language. Otherwise, the policy will be liberally construed in favor of the insured. The test is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.

6.

If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. The underinsured motorist coverage insurer then has 60 days to substitute its payment to the insured for the tentative settlement amount.

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed June 18, 2021. Reversed and remanded with directions.

*John G. O'Connor*, of Robb, Taylor & O'Connor, of Kansas City, for appellants/cross-appellees.

*J. Philip Davidson* and *Paul J. Skolaut*, of Hinkle Law Firm LLC, of Wichita, for appellee/cross-appellant.

Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.

HILL, J.: This lawsuit seeks underinsured motorist benefits from an employer's automobile insurance carrier. The insurer sought summary judgment on two grounds. The court granted summary judgment on one theory and denied the claimants any coverage. At the same time, the court denied judgment to the insurance company on the second theory. Both sides appeal. Our review leads us to hold that the court incorrectly granted summary judgment to the insurance carrier on the first theory and incorrectly denied summary judgment to the insurance carrier on the second. Thus, we must reverse both rulings. The claimants win one battle but lose the war.

*A bus driver was injured in a collision.*

Roger G. Yarbro Sr. was driving a school bus in 2011 for his employer, FirstGroup America, Inc., when the bus was struck by a vehicle driven by Christopher Hernandez. FirstGroup was insured by National Union Fire Insurance Company of Pittsburgh, P.A. The insurance policy had a liability limit of $5,000,000. But an insurance adjuster sent a letter to Yarbro's counsel advising that the uninsured motorist coverage under the policy was limited to the Kansas minimum limit of $25,000, which would be "equal or less th[a]n" Hernandez' policy limit. Without telling National Union, Yarbro settled his personal injury claim against Hernandez for Hernandez' policy limit of $100,000.

3

Yarbro died in 2015. After his death, the administrator of Yarbro's estate and Clyde David Yarbro, an heir, sued National Union, for underinsured motorist benefits. They lost.

Two of the district court's rulings are the subject of this appeal and cross-appeal. Yarbro and the Estate appeal the court's grant of summary judgment to National Union based on its ruling that FirstGroup had waived underinsured motorist coverage in writing. At the same time, the court denied summary judgment to National Union on a theory that Yarbro had forfeited any claim for underinsured motorist benefits by failing to notify National Union of a tentative settlement with the tortfeasor, Hernandez, as required by law. National Union appeals that ruling in a cross-appeal.

We first review some fundamental principles of automobile insurance law to provide a context for our analysis and ruling.

*Kansas law requires all automobile insurance policies to have certain provisions.*

When the Legislature embraced comparative fault principles, a negligent tortfeasor would be financially responsible only for the damages he or she had caused—and no more. And when it made this change, it required all motor vehicles to be covered by liability insurance. In other words, Kansas has compulsory automobile insurance.

All policies were, by law, required to have a minimum coverage amount of $25,000 that of course could be higher as the insured and insurer agreed. The law also required other types of benefits and coverages to be provided in all policies, which we will not review as they are not pertinent to our analysis.

One mandatory provision, however, is pertinent. Recognizing reality, the law in 1968 required all motor vehicle policies to provide uninsured motorist coverage with

coverage limits equal to the limits of the liability coverage under the policy. K.S.A. 40-284(a). The Legislature foresaw that perhaps not everybody driving on our roads would comply with this law requiring insurance, so a driver's own policy could provide some financial protection for the driver.

A few years later, in 1981, the Legislature required underinsured motorist coverage to also be included in all policies. Like uninsured coverage, underinsured coverage limits were to equal the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle. K.S.A. 40-284(b).

The two policy provisions—uninsured and underinsured—may be cousins, but they are not identical.

Over the years, caselaw has made manifest certain principles about these two required coverages. The overall purpose of K.S.A. 40-284 was to fill a gap in motor vehicle financial responsibility and compulsory insurance legislation. The coverage is intended to compensate innocent persons who are damaged through the wrongful conduct of a motorist who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages.

The statute is remedial. It should be liberally construed to provide broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident where those damages are caused by the acts of an uninsured or underinsured motorist. *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 430, 437, 66 P.3d 822 (2003). The insurance policy is controlling only to the extent it does not conflict with or attempt to diminish or omit statutorily mandated coverage. *Hemenway v. Automobile Club Inter-Insurance Exchange*, 57 Kan. App. 2d 109, Syl. ¶ 6, 447 P.3d 382 (2019), *rev. denied* 311 Kan. 1045 (2020).

Our Supreme Court has expressed the relationship between subsections (a) and (b) of K.S.A. 40-284 as a syllogism. Under K.S.A. 40-284(a), the policy limits of an uninsured motorist provision must be equal to the liability coverage in the insurance policy. Under K.S.A. 40-284(b), uninsured motorist coverage must include an underinsured motorist provision with coverage limits equal to the uninsured provision. Kansas law thus requires that underinsured motorist coverage in an automobile policy must have coverage limits equal to the liability coverage of the policy. *Mitchell v. Liberty Mut. Ins. Co.*, 265 Kan. 556, 559, 961 P.2d 1235 (1998).

We find one case significant. In *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 651, 983 P.2d 853 (1999), the court noted that while "the two coverages are separate, the statute treats the underinsured motorist coverage as a subcategory of uninsured motorist coverage 'include[d]' in the uninsured motorist coverage." But the rejection form the court approved in that case *did* specifically inform the insured that "underinsured" motorist coverage was being rejected. The form stated: "'I have been given the opportunity to purchase Uninsured Motorists Insurance (including Underinsured Motorists Protection) equal to my limits of liability of bodily injury or death, and instead I select lower limits of . . . .'" 267 Kan. at 648. The court held the language used in the form was "sufficiently clear in specifying that the higher limit for *underinsured motorist coverage*, not just uninsured motorist coverage, is being rejected." 267 Kan. at 651.

To us, this holding implies that a rejection form which does not reject the higher limit for underinsured motorist coverage is not a valid rejection of that higher limit for such coverage. The *McTaggart* court did not face the facts presented here, where the term "underinsured" does not appear on the rejection form.

We have one final note about these two coverages. The named insured has the right to reject, in writing, the uninsured and underinsured motorist coverages required by subsections (a) and (b) which exceeds the Kansas minimum limit of $25,000. See K.S.A.

6

40-284(c). In other words, the law requires coverage in the amount of the liability coverage on the policy, but an insured can choose only the statutory minimum amount if they wish. This brings us to the first issue—Did the employer, FirstGroup, validly reject underinsured coverage under the facts here?

When it granted summary judgment, the district court ruled that FirstGroup had rejected the higher coverage. Summary judgment is appropriate when the record shows no genuine issue exists about any material fact and that the moving party is entitled to judgment as a matter of law. Appellate review of the legal effect of undisputed facts is de novo. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019). Here, the facts are undisputed.

Yarbro and the Estate do not dispute that FirstGroup executed a valid written rejection of "uninsured" motorist coverage in excess of $25,000. But they argue that there was no such written rejection of "underinsured" motorist coverage because underinsured coverage is not mentioned in the rejection form. Thus, in their view, the policy contains underinsured coverage equal to the liability limit of $5,000,000.

National Union contends that since the definition of uninsured motorist coverage in its policy included underinsured motorist coverage, that its rejection form meets the requirements of K.S.A. 40-284(c), and that its rejection form did not have to include the term "underinsured" because Kansas law treats underinsured motorist coverage as a subcategory of uninsured motorist coverage.

*Why the district court was wrong on the first issue.*

We hold the district court misinterpreted both the insurance policy and the rejection form signed by FirstGroup. We find no unequivocal rejection of underinsured

limits less than the liability limits of the policy with National Union in this record. In fact, the rejection form did not even mention underinsured motorist coverage.

Interpretation of an insurance policy is a question of law over which appellate courts have unlimited review. When the terms of an insurance policy are ambiguous, the ambiguity is construed against the insurance company. Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language. Otherwise, the policy will be liberally construed in favor of the insured. The test is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *Bussman v. Safeco Ins. Co. of Am.*, 298 Kan. 700, 707, 317 P.3d 70 (2014).

Kansas courts liberally construe K.S.A. 40-284 to protect the insured's right to uninsured motorist coverage and strictly construe policy provisions trying to limit such coverage. *Escue v. Allstate Fire & Cas. Ins. Co.*, No. 19-1271-EFM, 2020 WL 7042598, at *3 (D. Kan. 2020). Any attempt to reject uninsured coverage in excess of the statutory minimum must be (1) in writing, as required by K.S.A. 40-284(c), and (2) the product of an affirmative, unequivocal act specifying the insured's rejection of excess coverage. *Bishop v. Empire Fire & Marine Ins. Co.*, 47 F. Supp. 2d 1300, 1306 (D. Kan. 1999).

Because the rejection provisions of K.S.A. 40-284(c) detract from the public policy goals of protecting innocent victims, the rejection provisions are narrowly and strictly construed. Even so, strict construction should not be invoked to circumvent application of an election under K.S.A. 40-284(c) that is apparent from the four corners of the insurance policy and the rejection form. *Ochs v. Federated Mut. Ins. Co.*, 43 Kan. App. 2d 127, 133-34, 221 P.3d 622 (2010). The terms of the signed rejection form became part of the insurance contract between the parties. Where the insurance contract

8

is not ambiguous, courts do not make another contract for the parties but will enforce the contract as written. 43 Kan. App. 2d at 137.

*Some policy details are important to our reasoning.*

In the insurance agreement between National Union and FirstGroup, the "SCHEDULE OF COVERAGES" lists 12 different types of coverage. Liability coverage is at the top with a $5,000,000 coverage limit. Uninsured motorist coverage and underinsured motorist coverage are separately listed. Under the entry for underinsured motorist coverage there is a note in parenthesis that states, "(When not included in Uninsured Motorists Coverage)." The limits for uninsured motorist coverage are "SEPARATELY STATED IN EACH UNINSURED MOTORISTS ENDORSEMENT." And the limits for underinsured motorist coverage are "SEPARATELY STATED IN EACH UNDERINSURED MOTORISTS ENDORSEMENT." We find no underinsured motorist endorsement included in this policy.

As part of the policy, there is another document titled, "KANSAS SPLIT UNINSURED MOTORISTS COVERAGE LIMITS." This document states that it modifies the "UNINSURED MOTORISTS COVERAGE ENDORSEMENT." It lists the coverage limits for bodily injury as $25,000 for each person and $50,000 for each accident. Within the definition section of the "KANSAS UNINSURED MOTORISTS COVERAGE" endorsement, an "Uninsured motor vehicle" means a land motor vehicle or trailer:

"a. For which no liability bond or policy at the time of an 'accident' provides at least the amounts required by Kansas law, or

"b. *That is an underinsured motor vehicle.* An underinsured motor vehicle is a land motor vehicle or 'trailer' for which the sum of all liability bonds or policies at the time of an 'accident' provides at least the amounts required by Kansas law, but their limits are less than the limit of this insurance, or

9

"c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

"d. For which neither the driver nor owner can be identified." (Emphasis added.)

Finally, the policy contains a document titled, "KANSAS NOTICE UNINSURED MOTORISTS COVERAGE" (the rejection form) that states:

"Kansas law requires us to provide Uninsured Motorists Coverage in your policy with a coverage limit equal to your policy's bodily injury limit of liability. You are not required to accept Uninsured Motorists Coverage at this coverage limit. You may select a lower coverage limit, but the coverage limit you select may not be lower than Kansas' minimum requirement, which is split limits of $25,000 each person and (subject to the each person limit) $50,000 each accident. This coverage limit may be selected as a combined single limit of $50,000 each accident."

FirstGroup selected "Uninsured Motorists Coverage with a coverage limit equal to Kansas' minimum requirement" split limits. This rejection form does not mention underinsured motorist coverage.

From the four corners of this insurance contract, it is not apparent when underinsured motorist coverage is included within the uninsured motorist coverage and when it is not. On the schedule of coverages, uninsured motorist coverage and underinsured motorist coverage are separate line items. The schedule of coverages shows there is supposed to be a separate underinsured motorist coverage endorsement that provides the coverage limits for underinsured coverage, but one was apparently not provided to FirstGroup.

The schedule shows that underinsured coverage may be included within uninsured coverage for some purposes, but does not specify for what purposes. A close reading of the Kansas uninsured coverage endorsement reveals that an uninsured motor vehicle

10

includes an underinsured motor vehicle for purposes of that document. But there is no indication on the rejection form that underinsured motorist coverage is included under uninsured motorist coverage for purposes of the rejection. It is ambiguous.

This ambiguity must be construed against National Union. If National Union intended for underinsured coverage to be included on the rejection form, it could have so stated. FirstGroup did not affirmatively and unequivocally reject in writing excess underinsured coverage as required by K.S.A. 40-284(c).

Finally, we are unmoved by the parties' argument about whether certain rejection forms were approved by the Department of Insurance. We no longer apply the doctrine of operative construction. We give no deference to administrative agencies' interpretations of their own implementing statutes when we are construing such statutes. The doctrine is now invalid. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 955, 335 P.3d 1178 (2014).

Thus, the district court erred when it granted summary judgment to National Union on this point. We must reverse and set aside that summary judgment. We turn now to the cross-appeal.

*The cross-appeal has merit.*

In its cross-appeal, National Union contends that Yarbro had to provide notice to National Union of any tentative settlement under K.S.A. 40-284(f). When he failed to do so, Yarbro waived any right to underinsured motorist benefits under the policy. In response, Yarbro and the Estate contend that when National Union denied the existence of any underinsured motorist coverage in a letter dated January 2012, the insurer waived its right to receive notice under K.S.A. 40-284(f). Thus, National Union should be estopped from raising this argument.

11

To solve this problem, we must begin with the statute which gives an insurer the right to pay the claim instead of the tortfeasor and then pursue a subrogation claim against the tortfeasor for what it has paid.

"If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured." K.S.A. 40-284(f). The underinsured motorist coverage insurer then has 60 days to substitute its payment to the insured for the tentative settlement amount.

If the underinsured motorist coverage insurer substitutes payment, the insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the insurer does not substitute payment within 60 days, the insurer has no right of subrogation for any amount paid under the underinsured motorist coverage. K.S.A. 40-284(f).

To sum up, this law requires notice of tentative settlement, a timely substitute payment by the underinsured motorist coverage carrier, and then subrogation rights are preserved.

An underinsured motorist insurance carrier that pays on a claim has the right to maintain a subrogation action against the party responsible for the motor vehicle collision. But the insurer's right to proceed against the responsible party stems from the rights of the injured insured. Thus, if the insured settles with the responsible party and executes a release of liability in favor of the responsible party, the insurer's subrogation right is impaired. The statute permits the insured to negotiate a speedy settlement while preserving the underinsured motorist insurer's subrogation right if it tenders substitute payment to the insured for the settlement amount. *Anderson v. Employers Mutual Casualty Ins. Co.*, 27 Kan. App. 2d 623, 627-28, 6 P.3d 918 (2000).

12

A case that offers guidance on this issue is *Dalke v. Allstate Ins. Co.*, 23 Kan. App. 2d 742, Syl. ¶ 4, 935 P.2d 1067 (1997). The *Dalke* panel held that an insured who settles his or her claim for injuries against an underinsured motorist and who releases that tortfeasor from further liability, all without notice to such insured's insurance carrier as required by K.S.A. 40-284(f), forfeits the right to recover under his or her policy's underinsured motorist provision. The court noted that the language of K.S.A. 40-284(f) contained no specific consequence to the insured for noncompliance with the notification requirement. But the court considered the mandatory language of K.S.A. 40-284(f), that Dalke's noncompliance had led to the loss of Allstate's subrogation rights, and public policy. 23 Kan. App. 2d at 747-49; see also *Owens v. Continental Ins. Co.*, No. 99-3201, 2000 WL 703133, at *4-6 (10th Cir. 2000) (unpublished opinion) (following *Dalke*).

*Dalke* is horizontal precedent and not binding authority upon this panel. We have some reservations about the holding. The statute does not say that the insured forfeits the right to recover underinsured motorist benefits by failing to provide notice to the carrier—the panel did. On the other hand, the statute also does not say that an insurer waives the right to notice under K.S.A. 40-284(f) by denying coverage as Yarbro and the Estate contend.

In a different context, a panel of this court held that failure to comply with K.S.A. 40-284(f) and K.S.A. 40-287 precluded a remedy in equity. In *Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins. Co.*, 40 Kan. App. 2d 123, 130-31, 190 P.3d 989 (2008), an underinsured motorist insurance carrier substituted payment after receiving notice of tentative settlement in accordance with K.S.A. 40-284(f). But the underinsured insurance carrier failed to sue before the statute of limitations ran. This court held the insurance carrier could not invoke equity because it failed to seize the chance to bring a timely tort action. "'Equity aids the vigilant and not those who slumber on their rights.'" 40 Kan. App. 2d at 131. The failure to comply with statutory requirements when the insurance carrier could have done so precluded a remedy in equity.

13

Both cases recognize that K.S.A. 40-284(f) creates and preserves an insurer's right to subrogation and promotes the public policy of making the tortfeasor responsible for the damages he or she has caused. We cannot ignore the importance of these policies and follow the *Dalke* holding.

*Where the court got it wrong on this issue.*

After reviewing the facts, the caselaw, and the statute, we hold the January 2012 letter was not a waiver of notice of settlement by National Union. Waiver in contract law implies that a party has voluntarily and intentionally given up a known right or has done some positive act inconsistent with the contractual right. Once it has been established that a right has been waived, the party possessing the contractual right is precluded from asserting it in a court of law.

Equitable estoppel is the effect of the voluntary conduct through which the party is precluded, both at law and in equity, from asserting a right against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. The party must also show it rightfully relied and acted on such belief and would now be prejudiced if the other party could deny the existence of such facts. *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017).

Waiver and equitable estoppel are not appropriately invoked here. Yarbro's counsel sent a letter requesting that the insurance adjusters open a file for underinsured motorist benefits in this case. The letter correctly noted that Kansas law required any policy of motor vehicle liability insurance to include underinsured motorist coverage with limits equal to the liability limits. See K.S.A. 40-284(b). The insurance adjuster responded that FirstGroup had chosen "uninsured" motorist coverage equal to the Kansas

14

minimum limits and instructed Yarbro's attorney to advise him "[s]hould you believe your client is entitled to underinsured benefits." The adjuster advised the attorney to contact him if more information was needed. The letter in part read:

> "I am the adjuster assigned to handle your inquiry of the potential underinsured motorist claim for Rodger Yarbro the First Student driver. For your record I have attached a copy of the First Groups declaration page and the Kansas Uninsured Motorists coverage in effect at the time of this accident, effective dates of 12/31/10 to 12/31/11. The selection that is chosen for uninsured motorist coverage is limited equal to Kansas minimum required limits which would be equal or less th[a]n the Tortfeasors policy limits. Should you have any further questions or require any addition[al] information please contact me.

> "Should you believe your client is entitled to underinsured benefits please advise me accordingly. Provide me with a current update in regards to your client's diagnoses and prognoses of injuries so we may update our file. Have the attached HIPAA medical authorization form completed and return along with the names addresses and phone numbers of the medical providers who are treating your client for any injuries resulting from this accident."

A copy of the signed rejection form was included with this letter.

The letter does not show National Union intended to give up its right to notice of a tentative settlement. Rather, the insurance adjuster asked Yarbro's attorney to

- keep him updated about Yarbro's diagnoses and prognoses of injuries;
- complete a HIPAA authorization;
- provide contact information for Yarbro's medical providers;
- provide copies of medical bills; and
- notify him if Yarbro still believed he was entitled to underinsured motorist benefits.

It does not appear that National Union was ready to close its file on the case. Rather, the insurance adjuster was ready to open the file as Yarbro had requested. This letter is not inconsistent with National Union's right to notice of a tentative settlement. The insurance adjuster wanted more information on the claim. And assuming the insurance adjuster did deny coverage of *underinsured* benefits, Yarbro did not have to rely on that statement. The rejection form was included in the correspondence and did not mention underinsured motorist coverage. Yarbro could have sent notice of a tentative settlement to National Union but failed to do so. Under *Dalke*, Yarbro forfeited his right to underinsured motorist benefits.

*We summarize our holdings.*

On the appeal, we set aside the district court's grant of summary judgment to National Union where the court found that FirstGroup had rejected in writing excess underinsured coverage as required by K.S.A. 40-284(c).

On the cross-appeal, we reverse the ruling of the district court denying summary judgment to National Union.

We remand this case to the district court with directions to enter summary judgment in favor of National Union because Yarbro failed to notify the insurance carrier of the tentative settlement he had reached with Hernandez.

Reversed and remanded with directions.